## ROBBINS *v.* KIMBALL.

### Decided February 6, 1892.

1. *Statute of frauds—Land—Parol agreement.*

One who pays for land and takes deed to himself is not bound by a parol agreement to let another have· an interest in the lands upon payment of a portion of the expenses incurred in acquiring the title, nor by a parol agreement to purchase for himself and the other jointly.

2. *Contract—Ambiguity—Conduct of parties.*

Where the evidence of the parties to a parol contract leaves its terms in doubt, their conduct under it is the best guide for its interpretation.

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

Robbins brought suit against Kimball to establish a trust in favor of himself in a tract of land purchased by the latter. His contention was that Kimball and himself were partners engaged in buying and selling real estate, and that he furnished part of the consideration of the purchase under a parol agreement with Kimball that he should have a half interest in the land. Kimball denied the existence of such partnership or agreement, and alleged that he purchased the lands with his own means, but agreed with Robbins to sell him a half interest in the lands upon condition that he should pay half of the purchase money when due—which Robbins failed to do. The court dismissed the complaint. The facts appear in the opinion.

*S. S. Wassell* and *S. W. Williams* for appellant.

The statute of fraud does not bar resulting trusts. Parol contracts to share in the profits of land speculations are upheld. 13 N. W. Rep., 894; 69 Tex., 685. In this case there is a resulting trust, even though Kimball has the legal title. 7 S. W. Rep., 525. A resulting trust may arise without money

being actually paid. 42 Ark., 531. It may be proved by parol testimony. 40 Ark., 62. It must arise contemporarily with acquisition of title, as it did in this case. 40 Ark., 62; 30 *id.*, 231; 29 *id.*, 613. There is no proof that Robbins ever consented to the release. The fact that Robbins brought this suit immediately after being advised of the release shows his intention to disaffirm. The release must have been confirmed by acceptance before it became binding. 2 Wait's Ac. & Def., 494; 3 Md., 67; 4 Pick., 518; 16 Minn., 172. See the case in 47 Fed. Rep., 380, a case very nearly like this.

*Jno. M. Moore* and *S. R. Allen* for appellee.

The plaintiff virtually abandons the partnership theory and claims a resulting trust. But Robbins never having paid a dollar, there is nothing to base a trust upon. A parol agreement does not raise a trust. 42 Ark., 408. If all Robbins says is true, there was a mere breach of a parol contract respecting the purchase of lands. 41 Ark., 399. There was no purchase by Robbins, and no payment by him to the owners, and therefore no trust. 13 Ark., 183–6; 45 *id.*, 481. To raise a resulting trust the money must have been paid and the consideration for the purchase moved from the plaintiff at the time of the purchase. 40 Ark., 62; 29 *id.*, 612, 630; 30 *id.*, 230. The evidence must be clear and convincing (48 Ark., 160), so as to leave no doubt. 11 *id.*, 82; 50 *id.*, 71. Perry on Trusts (2d ed.), secs. 133 to 137. But if he had any interest, he abandoned it by accepting the Shirk release. And his mortgage of the property immediately afterwards and his acts and words show conclusively his acceptance. The law of this case is settled by 69 Ind., 420, and 50 Ark., 71. See also 21 Atl. Rep., 522. If everything claimed by Robbins be true, he only acquired an option to participate in the purchase *upon condition* that he should pay his part. Having failed to do this, he will be held to have abandoned any rights he might have acquired by complying with the conditions. The court sustains the findings

of a chancellor, unless clearly against the preponderance of
evidence. 44 Ark., 219.

1. Parol agree-
ment to pur-
chase land is
within statute of
frauds.

COCKRILL, C. J. If Kimball obtained the title to the land.
in controversy with his own means under a parol agreement.
with Robbins to let him have an interest in it on condition
that he would pay one-half the expenses incurred in acquir-
ing the title, the contract would be void by reason of the
statute of frauds, and Robbins could take nothing through
it. It could not be enforced for the further reason that:
Robbins has not complied or offered to comply with the
condition by paying his share of the expense which it is ad-
mitted Kimball rightfully incurred. If the agreement was
that Kimball was to purchase for the joint benefit of him-
self and Robbins, but the title was taken to himself alone,.
the contract would still be within the statute of frauds. If
he used none of Robbins' means in making the purchase,.
there would be only the breach of a parol agreement which.
cannot raise a trust or form the basis of a title.

There is no evidence to warrant the conclusion that the:
parties were partners in buying and selling real estate. The
only route by which Robbins can arrive at an equity in the
land is to adduce from the evidence clear and satisfactory
proof that Kimball made use of his means in making the
purchase, and thereby establish an equitable interest in the
land through the medium of a resulting trust.

It is material, therefore, to review the conflicting and re-
criminating testimony, in which the record abounds, only for
the purpose of ascertaining whether any money of Robbins.
went into the purchase of the land. Beyond that it need
not be noticed.

It is certain that Kimball purchased the right to acquire
the title to the lands—an option, as the parties term it—for
the sum of $5000, and that Robbins paid no part of it;.
also, that the then owner of the land executed a deed to
Kimball in pursuance of that contract, when Kimball paid
him the sum of $11,666.66 and gave him his two notes for

like sums for the residue of the purchase price. Since that time Kimball has partly discharged these notes by payments. Robbins has paid nothing. The only pretence that can be made of any use of his funds was in the payment of the $11,666.66. That had been raised upon a mortgage by Robbins and Kimball to one Shirk of lands belonging severally to them, and the argument is, that it was the joint fund of the two parties and that Robbins acquired an equitable interest in the land to the extent of his interest in the fund.

Kimball's version of the transaction is that, about the time he purchased the option of the right to acquire the title, he made an oral agreement with Robbins to the effect that the latter should have the privilege of sharing in his trade when, or upon the condition that, he paid one-half of the price asked for the option and one-half the purchase price of the land; that it was in pursuance of that agreement the Shirk mortgage was executed; that the money thus borrowed was for his own use and not for the use of Robbins or of himself and Robbins, and that Robbins in effect joined in the mortgage note and put his lands in the mortgage as in the nature of a security for him to carry out his purchase in accordance with their contract, with the expectation on Robbins' part of fulfilling his agreement to pay one-half of the expense previously incurred and thereby being let into the equal enjoyment of the transaction. Robbins denies all this and claims that the mortgage transaction was an ordinary joint borrowing for their mutual benefit and that the fund raised was their joint fund.

The circumstances tend to sustain Kimball's version. He negotiated the loan as for himself alone, the money was remitted to him, it was deposited to his individual credit in the bank, and was paid out upon his individual draft, Robbins offering no protest nor suggesting any other course. Robbins was unable or unwilling to pay Kimball the amount he concedes was due him under the terms of their agreement, and at this juncture, several months after the deed to the property in question was delivered, Kimball exe-

2. Conduct of parties as evidence of terms of contract.

S C—27

cuted a mortgage to Shirk upon his homestead which was not included in the first mortgage, and thereby procured from Shirk a formal written release of Robbins' land from the operation of the mortgage, and caused it to be delivered to Robbins after it was duly recorded. Thereafter Robbins mortgaged and sold the real estate described in the release as though the Shirk mortgage had no existence—directing the attention of those with whom he dealt to the record evidence of the release, and thereby procuring them to disregard the existence of the mortgage by relying upon the release. By that conduct he derived the full benefit of the release, and that result is inconsistent with his position that he repudiated it.

We must take it then that he accepted the release. But the fact that he accepted the release and thereby resumed the position he occupied before the negotiation is strong corroborative evidence of Kimball's version of the contract as a conditional sale, and of Robbins' attitude toward the Shirk mortgage. This subsequent conduct sheds a light back upon the contract, and enables us to see what were probably its original terms. The parties themselves, not expecting a controversy about the contract, in all probability had not a very definite understanding of its terms, or of their legal status under it. What they did, therefore, in the execution of it, is the best guide attainable for its interpretation. *Watkins* v. *Greer*, 52 Ark., 65 ; *Gauss Sons* v. *Orr*, 46 *id.*, 129.

Robbins has failed to disclose a clear and satisfactory state of case as to the payment of his money in the purchase of the land, and the security which he furnished has been restored to and accepted by him. He has thus voluntarily assumed the position which Kimball says he was to take upon failure to comply with the terms of his conditional purchase. We must infer, therefore, that Kimball's recollection of the contract represents it in its true light.

For the reasons already assigned it cannot be enforced. Affirm.