KAHN *v.* METZ.

Opinion delivered December 7, 1908.

1. MORTGAGES—DEED ABSOLUTE IN FORM—SUFFICIENCY OF EVIDENCE.—A deed absolute upon its face will be construed to be a mortgage in

effect only when it is shown to be such by evidence that is clear, unequivocal and convincing.   (Page 369.)

2.   CONTRACT—CONSTRUCTION—CONDUCT OF PARTIES.—What the parties have done under a contract is potent to explain what its terms mean, where they are ambiguous.   (Page 369.)

3.   COMPROMISE AND SETTLEMENT—CONCLUSIVENESS.—When parties have mutually agreed upon a settlement of their dealings with each other and have adjusted balances on the basis of such settlement, nothing short of clear and satisfactory evidence of fraud or mistake will justify the falsifying or surcharging of such settlement.   (Page 370.)

4.   PLEADINGS—AMENDMENT TO CONFORM TO PROOF.—The rule that on appeal pleadings will be considered amended to conform to testimony adduced without objection applies to answers as well as to complaints.   (Page 372.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

### STATEMENT BY THE COURT.

William Metz brought suit in equity against Herman Kahn, alleging that on the 6th of October, 1899, he conveyed to Kahn a tract of land in Pulaski County as security for $600 loaned by Kahn to him; that on December 27, 1889, he conveyed to Kahn lots 4, 5 and 6 of block 6, in the city of Argenta, as security for $450 loaned plaintiff by defendant; that on the blank date he conveyed to defendant a tract of land in Lonoke County.   That afterwards Kahn reconveyed to him the land in Pulaski County, and that Kahn sold the land in Lonoke County for $750 and never accounted to plaintiff therefor.   That in April, 1906, Kahn sold to Dr. F. L. French, the Argenta lots for $6,200, and paid plaintiff therefrom $733.18.   That the defendant is entitled to a credit of $1,848.45, which he paid to the Herman Kahn Company; and that the defendant is also entitled to credit for taxes paid on plaintiff's property, the amount of which was unknown to plaintiff; and he prayed that an account be stated between them, and the defendant charged with all moneys received by him for the plaintiff's property, and credited with all sums to which he is entitled, and that plaintiff be given a decree for the balance.

Kahn answered the complaint, and admitted that Metz executed to him a deed to the property in Pulaski County, but denies that it was security for a loan of $600.   He admits that he deeded to him the lots in Argenta, but denies that the deed was

executed as security for $450. He denies that he executed to him a deed for the Lonoke County property, and that he afterwards sold it for $750, and that he had failed to account to plaintiff therefor. He says that he made more payments than are set forth in the complaint, for the account of the plaintiff, and that since the acquisition of the property from the plaintiff he has expended amounts upon the said property not set forth in the complaint; and he alleged that said conveyances were absolute, and were not intended as security for debt, and that the pretended claim of the plaintiff, if it ever existed, is stale and barred by limitation.

The evidence developed these facts: Herman Kahn was in the wholesale liquor business, being president of the Herman Kahn Company, a corporation, which was in December, 1906, succeeded by the Bloch-Lyons Company. That Metz was a customer of said company, being engaged in the saloon business in Argenta. The court found that there was nothing due Metz on account of the Lonoke County land. As there is no cross appeal, the controversy over it is eliminated.

There was a mortgage on the Argenta lots, and Coy, the holder of the mortgage, was threatening foreclosure. Metz applied to Kahn for the money necessary to satisfy the mortgage, which Kahn advanced. There is a dispute as to whether the amount was $450 or whether it was $750. Metz says that the conveyance of said lots to Kahn was for the purpose of saving it for him, and that Kahn settled with Coy, and was to wait on him until he was able to redeem the property. He gives a similar version of the transaction inducing his deed to Kahn for the farm in Pulaski County, which was situated near McAlmont.

The Argenta lots were sold to Dr. French for $6200 in 1906, and at that time Kahn paid Metz $733.18 and deeded back to him the McAlmont farm. Metz says that the amount due him at that time from the proceeds of the sale of the Argenta lots was as follows: That he should have been charged with the amounts which Kahn had paid on the Coy mortgages, with the $733.18, and with something like $2,000 which he owed the Herman Kahn Company, and taxes on the places for several years paid by Kahn; and should have been credited with the

difference between that and the $6200 received by Kahn for the sale of the Argenta lots, which he claimed was about $2300.

Kahn testifies that Metz came to him and told him that he was about to lose all of his property, and asked him to advance money to him to save it, which he finally agreed to do on this understanding: He was to pay $750 to Coy on the Argenta lots and stand good for an account to Herman Kahn Company, and Metz was to deed to him the property, and he would give Metz the privilege of rebuying the same within two years, with eight per cent. interest and taxes, and Metz was to give him a thousand dollars profit on the transaction. At the time of the conveyance of the Argenta lots, Metz was needing about $700 for his liquor license for the ensuing year, and wanted the Herman Kahn Company to advance it to him, and Herman Kahn personally guaranteed its repayment to the company, in addition to the $750 paid him, which went to relieve the Coy mortgage. As to the farm, it had been previously deeded to him in consideration of $600, a part of which was used to pay Coy for the mortgage upon it, and the balance to pay for forty acres of land which was included in the deed from Metz to him. He paid taxes on both pieces of property, and paid for improvements on the Argenta lots. These lots he sold to Dr. French for $6200, and at that time, at the direction of Metz, he paid to the Bloch-Lyons Company, the successor to the Herman Kahn Company, an account which Metz owed it, amounting to $1,848.45. The following questions were asked, and answers given, with reference to the sale of the Argenta lots: "Q. Who sold them? A. I did. Q. How did you come to deal with Mr. Metz in regard to it? A. Well, he came in, and the firm wanted their money, and he was all the time trying to pay this back account—this particular account—and finally I sold them to Mr. French myself, F. L. French."

He then charged Metz with $600 and interest from October 9, 1899, the date of the deed to the McAlmont farm; charged him with $750 and interest thereon from December 28, 1899, the date of the deed to the Argenta lots; charged him with the taxes on all the property, with the cost of a concrete walk on the Argenta lots, and one thousand dollars to pay for his services; and gave him a check for $733.18, which he claimed bal-

anced his account with him; and gave him a deed to the McAlmont farm.

In regard to this settlement, Metz testified: "After what Mr. Kahn called a settlement, after he gave me that seven hundred dollars and whatever it was, and made me sign a receipt payment in full up to date, I had to give him that receipt when he handed me that money." He then proceeds to state wherein he afterwards concluded that the settlement was wrong. He was asked this question: "Q. At the time Mr. Kahn gave you a check for $733.18, did you know how much he owed you at that time? A. I didn't know; he never gave me a statement." He denied that Kahn had ever furnished him a statement at the time of the settlement or prior thereto, or that he ever gave him any receipt for taxes or other memoranda relating to the property. On the other hand, Kahn says that at the time he gave him the check for $733.18 he furnished him a statement of these items; that he seemed pleased at the settlement then made, and executed to him the following receipt:

"Little Rock, Ark., April 7, 1906.

"Received of Herman Kahn seven hundred and thirty-three dollars and eighteen cents ($733.18) in full of all demands for any equity or claim of any kind I may have in lots 4, 5 and 6, in block 6, Argenta, Arkansas.

(Signed)    "William Metz."

That he gave him tax receipts and memoranda at that time.

Metz admitted that Kahn paid him $733.18. He was asked if he remembered what date it was, and answered: "Well, I couldn't say exactly. It was shortly (after) Mr. Kahn made up my account, and told me that was my balance; I don't know exactly the date." He admitted that he made no complaint to Mr. Kahn after that. The first time that he raised the question of the correctness of the settlement was by bringing this suit, which was filed about a year after the settlement.

Jos. Lyons testified that he was connected with the Herman Kahn Company, which has since become the Bloch-Lyons Company; and that he was present when the understanding was reached between Metz and Kahn. That Kahn several times refused to advance Metz money which he desired, and he finally made Kahn this proposition: "Mr. Kahn, if you will let me

have this $750, I will make you a deed to this property, and I will give you $1,000 additional profit on it, and I will take it up in two years, if you will permit me to take the property up in two years' time." That Metz needed about $700 shortly for his license, and Mr. Kahn guarantied this amount to the Herman Kahn Company.

The chancellor held that Metz's deeds to Kahn of the farm and of the Argenta lots were in effect mortgages, and stated an account between them on that theory, finding that Kahn was due Metz, on the 10th of April, 1906, the sum of $999.06, and gave judgment thereon, with interest from date. Kahn has appealed.

*Morris M. Cohn,* for appellant.

Metz is bound by his receipt, and ought not to be heard to question the settlement. There is no fraud, overreaching, mistake or false representation as an inducement to the settlement, either alleged or proved. The burden of proof was on him. The law favors settlements, and one will not be disturbed except upon clear and satisfactory evidence of fraud or mistake. 85 Ark. 592; 72 Ark. 234, 240; 80 Ark. 438; 80 Ark. 469; 53 Ark. 155; 47 Ark. 541; 41 Ark. 502; 13 Ark. 609; 24 Ark. 459; 34 Ark. 63; *Id.* 291; 20 Ark. 216; *Id.* 526; 23 Ark. 444; 14 Ark. 360; 12 Ark. 401.

*J. H. Harrod* and *W. R. F. Paine,* for appellee.

1. That the conveyances were mortgages is conclusively shown by Kahn's own act in paying Metz the $733.18 after he sold the Argenta lots.

2. A receipt is only *prima facie* evidence, and may be avoided by satisfactory proof that it was given under mistake. 21 Ark. 357.

HILL, C. J. (after stating the facts). Metz made deeds to Kahn for two pieces of property, one city lots of Argenta, and the other a farm in Pulaski County. Over six years afterwards Kahn sold the city lots for $6200, paid the indebtedness of Metz to his (Kahn's) business corporation, and repaid himself amounts which he had advanced to Metz on this property and upon a farm, together with interest thereon, taxes paid and improvements placed on the property, and charged Metz $1,000, as he claimed, pursuant to an agreement, for his undertakings and

gave Metz the residue, $733.18, and deeded him the farm. Metz has brought suit for an accounting, on the theory that the conveyances were mortgages, Kahn claiming that they were absolute sales. The chancellor found that there were mortgages, and decreed accordingly, from which decree Kahn has appealed. The pleadings and material facts are summarized in the statement by the court. Two questions arise: First, were the deeds mortgages; and second, was there a settlement between the parties.

1. In the case of *Rushton* v. *McIllvene, ante* p. 299, the court considered the quantum of evidence necessary to establish a deed, absolute on its face, to be a mortgage in effect, and approved this rule, which has oftentimes been applied by this court: "The evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail."

If the evidence upon this point rested on the testimony of Metz, it would utterly fail to meet the requirement; but it did not rest there, and the testimony of Kahn and his actions convince the court that the conveyances under consideration were in fact mortgages, though absolute in terms. This conclusion is reached from the action of Kahn under the deeds. He paid money to Metz and assumed other sums due his (Kahn's) business corporation; and finally, because Metz was insisting upon paying this particular debt, he sold the property, and from the proceeds repaid all of his indebtedness, which would have been secured by these deeds if in the form of mortgages, and exacted of Metz a receipt reciting that the payment then made was "in full of all demands for any equity or claim of any kind I may have in lots 4, 5 and 6, in block 6, Argenta, Arkansas."

Lord Chancellor Sudgen said, "Tell me what you have done under a deed, and I will tell you what that deed means." This statement was quoted with approval in *Gauss* v. *Orr*, 46 Ark. 129. No explanation is made by Kahn of his accounting to Metz for the residue after paying the sums secured by the deeds and the additional sum of $1,000, which he and Lyons said were to be paid him for assuming these undertakings, and the deeding over to Metz the farm. If it had been done as gratuity, made to him on account of friendly relations or long dealings with him as a customer, or any other explainable cause, it might have re-

butted the force of his conduct under the deeds. But no explanation was offered, and the court is met with this conduct under the deeds, which is the conduct required if they were mortgages. It is more potent than testimony of witnesses in fixing their character as mortgages.

2. Treating the conveyances as mortgages, there remains to be decided whether there was a settlement of the accounts growing out of these transactions. Metz, at one place in his testimony, refers to a statement that Kahn made him showing the residue due him from the French sale after paying various sums; but when he was directly asked whether Kahn furnished him a statement, he denied that he ever had any statement of these transactions, and declared that the only statement furnished him was the statement of his account with the liquor company of his dealings with it. Kahn testifies that he gave him a detailed statement, showing in full the transactions between them, and turned over to him tax receipts and receipts for money paid out on improvements on the property, and other memoranda relating to the property.

In view of this conflict on the point of an account being rendered and the decision in favor of Metz, it cannot be said that the doctrine invoked of the stated account is applicable.

There were transactions running over six years to be settled in an accounting between Kahn and Metz. Kahn says that the original agreement was that he was to have one thousand dollars for undertaking the various matters that he did undertake in the event of repurchase by Metz; and in this he is supported by a witness. On the other hand, Metz says that Kahn was to allow him to redeem at any time upon the repayment of the sums advanced to him. Had the settlement been made within the two years during which Kahn admits Metz had the right to repurchase the property, there would have existed between them a dispute as to this matter, and the dispute was not eliminated by the prolongation of the time of repurchase, or redemption. The conveyances were in the forms of absolute deeds, and, as contended on the side of Kahn, they were such, with a mere right to repurchase on the conditions named by him. On the other side, it was contended by Metz that they were in effect mortgages, although in form they were absolute deeds. There was also a

contention on the part of Kahn that he was entitled to eight per cent. interest on the sums advanced by him, and this was denied by Metz.

These various differences were matters of adjustment between men of full age and sound mind, and the law favors amicable settlement of differences. "The law favors settlements, and courts will not open or disturb them but for cogent reasons. When parties have mutually agreed upon a settlement of their dealings with each other, and have adjusted balances on the basis of such settlement, nothing short of clear and satisfactory evidence of fraud or mistake will justify the falsifying or surcharging of such settlement." *Fletcher* v. *Whitlow,* 72 Ark. 234.

In *Burton* v. *Merrick,* 21 Ark. 357, the court said: "A receipt expressed to be in full of all demands is only *prima facie* evidence of what it purports to be, and, upon satisfactory proof being made that it was obtained by fraud or given under a mistake, it may be inquired into and corrected in a court of law as well as in equity. But where the receipt is introduced by the party relying on it, and there is no attempt from the other side to prove that it was obtained by fraud or given by mistake, it must necessarily operate in the particular case as conclusive evidence of what it purports to be upon its face."

The application of these principles to the receipt in evidence forces the conclusion that it must be given effect as written. There is no evidence of imposition, fraud or mistake. There is no evidence of weak-mindedness, overreaching or inability to care for himself on the part of Metz. The amount paid for which the receipt was given represented the amount which Kahn contended was due to Metz upon the settlement of their accounts. Metz admits that this was stated to him by Kahn; and whether he received a detailed statement at that time is immaterial. It was his right to have it; and, if he omitted to demand it, that was his misfortune. He knew what the sum then paid him purported to be; and he was required to sign a receipt in full of all demands growing out of his equity in the property which had been sold. He then received a deed for the other property in addition to the cash paid him evidenced by the receipt; and the only outstanding matter that could have been between them was over pro-

ceeds of the Argenta property and the amount due him from the sale of it to Dr. French. Instead of demanding a detailed statement at that time and questioning it then, he accepted the money and land tendered him and waited a year before bringing suit, and never, until this suit was brought, questioned the correctness of the sum paid him in full settlement of these transactions. As heretofore shown, there were matters of fair controversy between them, and when he accepted from Kahn the conveyance of the land and the payment of the $733.18 in full settlement of them, and executed a receipt evidencing the same, it was binding upon him unless he showed that his acceptance of the deed and the money and execution of the receipt were made under mistake of fact or induced by fraud. There is neither evidence nor allegation of fraud or mistake in the settlement. There is evidence of Kahn's contentions and of Metz's contentions, which radically differ; but these were subjects for mutual adjustment, and if adjusted according to Kahn's contention, and the consideration paid and accepted, it is too late to reopen the matter merely to establish that Metz's contentions as the juster basis of settlement.

It is objected that the settlement was not pleaded in the answer. But the evidence of the settlement and the written receipt evidentiary of it were received without objection. It is an undisputed fact of the case, only its effect being a matter of controversy. It is permissible under the Code to amend pleadings to conform to the proof; and on appeal, where the pleadings have not been so amended, they are considered amended to conform to the testimony which has been adduced without objection. *Railway Co.* v. *Triplett,* 54 Ark. 289; *Davis* v. *Goodman,* 62 Ark. 262; *Waterman* v. *Irby,* 76 Ark. 551; *Young* v. *Stevenson,* 75 Ark. 181. This principle has been applied to answers as well as complaints. *Shattuck* v. *Byford,* 62 Ark. 431; *Trippe* v. *DuVal,* 33 Ark. 811.

This is an equity case, where the trial here is *de novo* on the record as made in the chancery court, and the pleadings will be considered amended here to conform to defenses made out by evidence introduced without objection.

Decree reversed and complaint dismissed.