**ELI et al. v. CARTER OIL CO. et al.**

No. 17106.   Opinion Filed April 19, 1927.

Rehearing Denied July 5, 1927.

(Syllabus.)

1. **States—Administration Pending in U. S. Court Upon Statehood Transferred to County Court of County Where Pending.**

An administration proceeding, pending in one of the United States Courts of the Indian Territory at the time of the admission of the state into the Union, was, by virtue of section 19 of the Enabling Act (34 Stat. 277) and section 23 of the Schedule of the Constitution, transferred to the county court of the county in which was located the court in which said proceeding was pending.

2. **Same—County Court's Jurisdiction not Ousted by State Statute Where Transfer to Another and Proper County not Applied for.**

The Act of the Legislature of March 12, 1908 (Session Laws 1907-8. page 212), did not oust the jurisdiction of the county court in an administration proceeding, which jurisdiction had attached by virtue of the provisions of the Enabling Act and the Constitution of the state in such court as a successor to the probate jurisdiction formerly exercised by the United States Court for the Northern Judicial District of the Indian Territory, where no application for the transfer of such cause was made by any of the parties having an interest therein.

3. **Same—Indians—County Having Jurisdiction to Settle Estate of Deceased Allottee—Authority to Approve Conveyance by Full-Blood Heirs.**

Nancy Eli departed this life in the year 1903, a resident of the Northern Judicial District of the Indian Territory, leaving surviving as her sole heirs at law certain full-blood citizens of the Cherokee Nation. An administrator was appointed by the United States Court for the Northern Judicial District of the Indian Territory sitting at Tahlequah, which on the advent of statehood became Cherokee county, Okla., Tahlequah being the county seat. The provisions of section 19 of the Enabling Act and sections 23 and 27 of the Schedule to the Constitution of the state operated to transfer the jurisdiction of said administration to the county court of Cherokee county, with permissive authority that the same might be transferred to another county, but no transfer was ever made, as provided by the said act of the Legislature of 1908. Held, that the said county court of Cherokee county was the court having jurisdiction of the settlement of the estate of the said decedent, within the meaning of the proviso to section 9 of the Act of May 27, 1908, directing that the county court having the jurisdiction of the settlement of the estate of the deceased allottee should be the federal agency authorized to approve a conveyance of a full-blood heir to land of a deceased allottee, and that this was true whether the said county court had discharged the administrator or not before the deeds were approved. The jurisdiction, having once been determined, and no transfer thereof being made, continued for all purposes touching the estate of said allottee, and any acts required to be done in relation thereto by a court having the jurisdiction of the settlement of the estate of the allottee.

Error from District Court. Nowata County; C. H. Baskin, Judge.

Action by Taylor Eli and others against the Carter Oil Company and others. Judgment for defendants, and plaintiffs bring error. Reversed.

Reynolds & Williams, T. C. Wilson, John Barry, and Linebaugh & Pinson, for plaintiffs in error.

J. Wood Glass, Floyd A. Calvert. Malcolm E. Rosser, James A. Veasey, L. G. Owen, and Walter Davison, for defendants in error.

BRANSON, C. J. This action was prosecuted in the trial court and is prosecuted here by Taylor Eli, James Eli, and Charlotte Chuculate. joined by their grantees, T. C. Wilson and R. E. Tucker, against the defendants, the Carter Oil Company, J. W. Glass, F. A. Calvert, and Louella Chestnut. The action is in ejectment to recover a certain tract of land. Other relief was prayed, the granting of which was dependent upon the plaintiffs establishing their ownership to the property. The land was a Cherokee allotment, made under and by virtue of the provisions of the Cherokee Agreement of July 1, 1902 (32 Stat. L., page 716). The allotment was made in the name of Nancy Eli, who departed this life in the year 1903. The plaintiffs, Taylor Eli, James Eli, and Charlotte Chuculate, were her sole heirs at law. Both the allottee and her said heirs were citizens by blood of the Cherokee Nation, duly 'enrolled as such upon the final rolls of said tribes as of full Indian blood. In 1911, 1920. and 1921, respectively, instruments in form conveyances were executed by the said heirs, through which defendants claim, and same were approved by the county court of Adair county, Okla. Thereafter, conveyances were executed by the said heirs to the cop'aintiffs, and this suit is to try the title to the real estate. The last-named conveyances, through which the plaintiffs Wilson and Tucker claimed, were approved by the county court of Cherokee county, Okla.

There was little, if any, dispute as to the facts, the same being .deducible from record evidence. The only fact not deducible from record and material here is conceded by all parties to this litigation. That fact is that the said Nancy Eli, in whose name the said land was allotted, departed this life in the year aforesaid, a resident of the Northern Judicial District of the Indian Territory, and of that portion of said district which became Adair county. Okla., on November 16, 1907 (the date Oklahoma was admitted into the Union as a state). Judgment went for

the defendants, and the errors assigned are predicated upon the conclusions of law based upon this further statement of facts:

In 1904, one Andy Dick was appointed as administrator of the estate of the said Nancy Eli, by the United States Court for the Northern District of the Indian Territory, sitting in probate at Tahlequah. That the said United States court for the said political subdivision, to wit, the Northern District of the Indian Territory, had jurisdiction to make this appointment, is not by any of the parties questioned. It is not questioned that this probate case was pending at Tahlequah, in what afterwards became Cherokee county, Okla. This probate proceeding had not been closed on the advent of statehood, and on November 20, 1907, or four days after the admission of the state into the Union, the said probate cause having by operation of the provisions of the Enabling Act and the Schedule to the Constitution of the state of Oklahoma, hereinafter specifically mentioned, been lodged in the district court of Cherokee county, Okla., that court on said last-named date entered an order transferring said cause to the county court of Cherokee county, which, under the new order of things, brought about by statehood, was the court of probate jurisdiction in said county. The. said cause as No. 638 continued in said county court until the 22nd day of October, 1908, when the administrator aforesaid was finally discharged by a formal order of said court.

The question here is. Which deeds are valid, those approved by the county court of Adair county, or those approved by the county court of Cherokee county?

Defendants in their brief make this statement (page 29):

"We will say to the court at the outset that we believe there is no case from any other jurisdiction which sheds any light upon the main propositions involved, and there is no Oklahoma case where the facts are exactly the same."

We concede that this statement is unfortunately correct in the main, but cannot concede that by analogy there are not cases strongly persuasive on the direct question here involved.

The defendants primarily argue that (their brief, page 44) since the proceeding originating in the United States court was finally, fully. and completely closed on October 22, 1908, thereafter the county court of Cherokee county wou'd not have jurisdiction of the settlement of the estate, but only the

Adair county court would have such jurisdiction.

We deem it not amiss to advert to statements made in cases by courts of authority on analogous questions.

In the case of Parker v. Richard, 250 U. S. 235, 63 L. Ed. 954, after quoting the proviso to section 9 of the Act of Congress of May 27, 1908 (35 Stat. L. 312), it was said:

"In the absence of the proviso it would be very plain that, on the death of the allottee, all restrictions on the alienation of the land allotted to him were removed. But the proviso is there and cannot be disregarded. It obviously limits and restrains what precedes it. In exact words, it puts full-blood Indian heirs in a distinct and excepted class and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed, but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions. That the agency which is to approve or not is a state court is not material. It is the agency selected by Congress, and the authority confided to it is to be exercised in giving effect to the will of Congress in respect of a matter within its control. Thus in a practical sense the court, in exercising that authority, acts as a federal agency; and this is recognized by the Supreme Court of the state. Marcy v. Seminole County, 45 Okla. 1, 144 Pac. 611. Plainly, the restrictions have the same force and operate in the same way as if Congress had selected another agency, exclusively federal, such as the Superintendent of the Five Civilized Tribes."

Again, commenting in a case analogous to the one at bar (Okla. Oil Co. v. Bartlett, 236 Fed. 488), and in which section 9 of the Act of May 27, 1908, was involved, the Eighth Circuit Court of Appeals said in effect that there was no general jurisdiction of the estates of deceased allottees given to all county courts in the different counties of the state of Oklahoma, or to hear the particular facts relating to the questions of residence at the time of the death of the allottee, and to determine whether the same were sufficient to invoke the exercise of its power; that doubtless Congress had power to prescribe such provisions as would authorize the determination of this issue, but no such provision is contained in the statute (to wit, the said section 9) granting such authority. Congress did condition the right and duty to approve such deed to the " 'court having jurisdiction of the settlement of the estate of the said deceased allottee.' This

left the determination of that issue to the statutes of the state of Oklahoma."

Particular attention is called to the last sentence, which we deem has become well settled. That is, in effect, to repeat, that Congress, having constituted a certain county court as a federal agency to approve such deeds, the question of which court had jurisdiction, not having been determined by the national Congress, was to be determined under local law.

At the time of the passage of the said Act of May 27, 1908, the different provisions of law determinative of the jurisdiction of the county courts of the state for such purposes were necessarily considered in the use of the phraseology employed, and as was aptly stated in the Bartlett Case, supra, Congress refrained from undertaking to do other than to leave the determination of the court having jurisdiction to the statutes and rules governing judgments in such cases, under the acts authorizing the erection of the two territories into a state, and the statutes of the state itself. It was with knowledge of these provisions, some of which were contained in the Act of Congress of June 6, 1906, known as the Enabling Act; others were by nature of the provisions of the Constitution of the state of Oklahoma (Schedule thereto), that they undertook to and did preclude any hiatus in any proceedings pending in any court by reason of the change from territorial to state government. After statehood, the statute of the state (Comp. St. 1921, sec. 1088) provided:

"Wills must be proven and letters testimentary or of administration granted (1) in the county of which the decedent was a resident at the time of his death, in whatever place he may have died."

There could be no controversy, if Nancy Eli had departed this life after statehood a resident of Adair county. This county, as a political subdivision of Oklahoma, sprang into existence by force of the Constitution of the state. The jurisdiction to administer the estate would have been unquestionably in the county court of said county. We know of no rule that places jurisdiction to suit the convenience or desires of the parties at interest, or permits them to toy therewith. It is fixed by statute law. In many cases a judgment appointing an administrator, finding that the court rendering the judgment had jurisdiction, determines the question of jurisdiction, and this continues and obtains unless vacated properly, as said in the Bartlett Case, supra, by reason of the fact that a court of competent jurisdic-

tion had passed on the question, and its decree is not subject to collateral attack.

It was with knowledge of and correlated with these principles that the hereinafter quoted provisions became the law.

Section 19 of the Enabling Act, cited supra, provided:

"That the courts of original jurisdiction of such state shall be deemed to be the successor of all courts of original jurisdiction of said territories and as such shall take and retain custody of all records, dockets, journals, and files of such courts except in causes transferred therefrom, as herein provided; the files and papers in such transferred cases shall be transferred to the proper United States circuit or district court, together with a transcript of all book entries to complete the record in such particular case so transferred."

Section 20 provided:

"That all cases pending * * * in the United States Courts for the Indian Territory at the time said territories become a state * * * shall be proceeded with, held and determined by the courts of said state the successors of said * * * United States Courts for the Indian Territory."

The question then presents itself, Did the Constitution of the state provide what court should be the successor of the United States Court for the Northern District of the Indian Territory? This question is answered by section 23 of the Schedule to the Constitution of the state:

"The district court of any county, the successor of the United States Court for the Indian Territory, in each of the counties formed in whole or in part in the Indian Territory. shall transfer to the county court of such county all matters, proceedings, records, books. papers, and documents appertaining to all causes or proceedings relating to estates; provided that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

The question then may be asked. Where was the district court, and what district court was made the successor of the United States court in the exercise of its jurisdiction at Tahlequah in the Northern District of the Indian Territory? That is answered by sections 23 and 27 of the Schedule to the Constitution. The last section provides:

"All cases, civil and criminal. pending at the time of the admission of the state into the Union * * * in the United States Court for the Indian Territory, within the limits of any county, created in whole or in part, within the limits of what was heretofore

the Indian Territory, and all records, papers and proceedings of said United States Courts for the Indian Territory * * * shall be transferred to the district court of the state for such county," etc.

Section 1 of the said Schedule provides:

"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the forms of government. But all shall continue as if no change in the forms of government had taken place." .

Again, section 8 carries forward judgments, etc.

From these provisions. it appears that any probate proceeding, such as is the instant case, pending in the United States Court at Tahlequah, which was transferred by operation of law to the district court of such county, of which Tahlequah is the county. seat, in which the said court sat, to wit, Cherokee county, Okla., and that by the said. provisions of the Constitution the district court was required to transfer the same to . the county court of Cherokee county, which . should proceed to final determination, under the laws of the state, and this with the same force and effect as if the county court of Cherokee county had itself adjudged its jurisdiction in the first instance. Thereby this jurisdiction became exclusive of the jurisdiction of all other probate courts of the state. until the same was transferred in some method provided by law, enacted under the said permissive authority given by the proviso of the said section 23 of the Schedule to the Constitution. For, as stated by this court in the case of Clement v. Brown, 103 Okla. 108, 229 Pac. 416:

"The county court of the county in which application is first regularly made for letters testamentary or of administration, shall have jurisdiction co-extensive with the state in the settlement of the estate of the decedent * * * and to determine the fact of heirship in and to said estate, and it excludes the jurisdiction of the county court of every other county." State ex rel. Manahawee v. Hazelwood, County Judge, 81 Okla. 69, 196 Pac. 937.

Further, the effect of the said provisions of the Enabling Act and the said provisions of the Constitution recognized that the judicial or political subdivision, to wit, the Northern District of the Indian Territory. would be abolished, and that the judgments entered by the court sitting at Tahlequah in probate should be by said provisions brought into the county court of Cherokee county, and made just as effective as the basis for continuing proceedings as if the jurisdiction of the county court of Cherokee county had

been involved and a similar judgment finding that it had jurisdiction and appointing an administrator had by it been entered. For, otherwise, there would have been no occasion for the proviso to the said section 23, which gave the Legislature permissive authority to provide for the transfer of all such matters to another county other than the county court which by force of said provisions became the successor of the said United States court, in probate, sitting at Tahlequah.

Following the proviso, the Legislature of the state in 1908 passed an act which was approved March 12, 1908 (Session Laws 1907-8. page 212), authorizing the transfer of such administration proceedings, as in the instant case, to another county. But this court has held that where no motion by any party interested was filed, the mere passage of that act did not oust the jurisdiction of the court from which the transfer might have been made in the instant case, the county court of Cherokee county. Bailey v. Jones et al., 96 Okla. 56, 220 Pac. 345. In this last-named case, this court further said:

"An administration proceeding, pending in one of the United States Courts of the Indian Territory at the time of the admission of the state into the Union, was, by virtue of section 19 of the Enabling Act (34 Stat. 277) and section 23 of the Schedule of the Constitution, transferred to the county court of the county in which was located the court in which said proceeding was pending.'"

So we find that the said act of the Legislature approved March 12, 1908, carried out the permissive authority granted in the said provision of the Constitution of the state, and authorized the transfer of the jurisdiction—in the instant case, from the county court of Cherokee county to the county court of Adair county. But this was never done. The jurisdiction, by force of the said quoted provisions of the Enabling Act and the Constitution, theretofore adjudged by the United States court, was made in effect the judgment of the county court of Cherokee county. and with equal force determinative that it had jurisdiction of the settlement of this estate; and it proceeded with the entry of such orders as it deemed proper to make until October 22, 1908, during which time the said provisions for transfer of jurisdiction by the said act of March 12, 1908, had exhausted themselves, and no transfer was made.

The conclusion must therefore be that, the Cherokee county court having properly acquired jurisdiction of this estate, and the judgment so finding being made continuously effective after statehood, and no transfer of such jurisdiction being made under authority of law, the said county court not only acquired. but continued to hold and have the sole and exclusive jurisdiction of the said estate, and all matters required to be done in relation thereto. It had this jurisdiction when the Act of May 27, 1908, became effective, in section 9 of which act deeds as in the instant case were required to be approved by the county court **having** jurisdiction of the settlement of the estate of the deceased allottee. If the deeds first approved had been presented to said court prior to October 22, 1908, no serious question could have been here. (Bailey v. Jones, supra.)

This court. in the case of Clement v. Brown, supra, held that a conveyance approved by the county court of Murray county was good as against a conveyance approved by the county court of Pontotoc county. although the decedent was a resident of Pontotoc county at the time of his death, and this for the reason that before the deeds were approved in Pontotoc county, the county court of Murray county had entered a judgment finding it had jurisdiction of the administration of the estate of the decedent, and carried on the administration thereof.

In the instant case, while the county court of Cherokee county had completed the administration of the estate of the decedent, and discharged the administrator after the said act of Congress was passed, which granted it the authority as a federal agency to approve conveyances made of inherited land by full-bloods, it "having jurisdiction" of the settlement of the estate, we cannot escape the conclusion that the present participle "having" is used, fully cognizant of the fact that as a matter of law a court, having once adjudged that it had jurisdiction, would hold that jurisdiction to the exclusion of every other court, and for all purposes as to which a probate court having jurisdiction is now or may in the future be called upon to act. And fully cognizant of the fact that as a matter of law a jurisdiction once attaching, either by operation of the statute (Enabling Act and Schedule to the Constitution) or by a judgment concluding the facts, that such jurisdiction can be transferred to another court only as is provided by law, and unless that is done the jurisdiction first attaching is within the meaning of the said section 9 of the said Act of May 27, 1908, the court having the jurisdiction, and the approval by it of deeds executed by full-bloods makes them valid conveyances of the title. We know of no

rule of law, and none is cited, that would rob a court of jurisdiction which once was acquired as by the law provided from doing all things which are required by law of the court so charged with administration of an estate, even if something must be done after the administration is discharged. The case of Leonard v. Childers, 67 Okla. 222, 170 Pac. 247, is in no wise in point. (The Osage Nation, as stated in brief, was not part of the Western District of the Indian Territory.) Nor does Burton v. Colley, 113 Okla. 265, 242 Pac. 185, have any bearing on the question here.

The conclusion we reach is supported by the reasoning in the following cases: Culver v. Hardenberg (Minn.) 33 N. W. 792; Beasley v. Howell (Ala.) 22 South. 989; State ex rel. Wesley, Adm'r. v. Carr. 114 Okla. 121, 244 Pac. 436; Clemens v. Comfort, 20 La. Ann. 269; Beale v. Walden, 11 Rob. (La.) 67; Harrang v. Harrang, 7 Mart. N. S. (La.) 51; Lindsey Heirs, 5 McCormick, 2; A. K. Marsh (Ky.) 229; Drake's Administrator v. Vaughn, 6; J. J. Marsh (Ky.) 147; Buckinghouse v. Gregg, 19 Ind. 401; Milk v. Kent, 60 Ind, 231; Page v. Bartlett, 101 Ala. 193; Jones v. Rountree, 96 Ga. 230; McBain v. Wimbish, 27 Ga. 259; Bugbee v. Surrogate, 2 Cow. (N. Y.) 471.

The judgment of the district court must be reversed for further proceedings not inconsistent herewith.

PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 25 C. J. p. 984, §363. (2) 15 C. J. p. 1148. §613; p. 1149, §618. (3) 15 C. J. p. 810, §107.