McMillan v. Gurdon Lumber Company.

4-3483

Opinion delivered June 18, 1934.

McMillan & McMillan, Walter L. Pope, and Frauenthal & Johnson, for appellants.

D. H. Crawford and McRae & Tompkins, for appellees.

Mehaffy, J. Charles S. Thornton and Justus Chancellor owned a large tract of timber land in Clark County, Arkansas, and on June 24, 1924, entered into a contract with the Sparkman Hardwood Lumber Company to give the Sparkman Hardwood Lumber Company and its assigns the exclusive right for a period of ten years to go upon said land and cut and remove therefrom such timber as the said Sparkman Hardwood Lumber Company or its assigns might desire, and which it or its assigns within the terms of the agreement, actually cut and removed. The price agreed upon, and which was paid, was $70,000. The contract provided that the title to the timber when cut should immediately vest in the lumber company or its assigns. The sellers agreed not to cut or remove or permit any one else by their consent to cut or remove any of the timber from said land until it was surrendered as provided for in the contract. The contract also provided for the purchasers to pay the taxes. Another provision in the contract was that, when all the timber desired by the lumber company should be cut and removed from any sections of the land described, the purchaser should immediately designate such section in writing to the sellers and should not thereafter be permitted to cut or remove any timber from the section or sections so surrendered and not thereafter be required to pay taxes except on

those tracts of land over and through which it might be operating its logging railroad or tramway, but that it should continue to pay taxes on such lands as long as it is operating a line of railroad over and through same. The contract provided for free ingress and egress for the purpose of cutting and removing timber, and was given the right to construct, maintain and operate logging railroads and skidways, logging camps and mills, but that such use and privilege was not to interfere with the cultivation of said lands or other use to which the sellers may desire to put the same. It was provided in the contract that no representation or warranty was made with reference to the amount of timber, but that the estimates were made merely for the purpose of arriving at a basis for making deferred payments. The contract described the land and the amount of timber on each section as estimated was set out. It was also provided that the purchaser was not required to cut any part of the timber or remove any of it, but the right conferred was an exclusive privilege given to the purchaser or its assigns to remove as much of said timber as it might desire within the life of the contract.

Thereafter there was a suit in partition by Thornton against Chancellor, and the land was divided. After the division, Dougald McMillan in 1931 became the owner of that part of the land awarded to Chancellor in the partition suit, and in 1933 the appellee, Gurdon Lumber Company, obtained an assignment of the right of the Sparkman Hardwood Lumber Company for the same lands. This suit was then brought by appellant, alleging that the Gurdon Lumber Company had been for many weeks cutting and destroying much timber besides that which they had a right to or were entitled to cut because it was less than 12 inches in diameter, and the complaint alleged that the appellee was still cutting and intended to continue to cut all trees 6 inches and over if not restrained; that cutting the young timber was a waste and the product an inferior quality in grade, but, if the trees were permitted to stand, they would grow and become valuable. It was further alleged that appellee's cutting

deprived appellant of the use of his land for the purpose for which it was best suited, that of growing timber, and that this was an irreparable injury to the appellant. It was also charged that appellee was wilfully destroying appellant's timber by causing the fallen trees to strike and break the small trees and that this caused irreparable injury; that appellee was piling and permitting piles of trees and tops to rest against young trees, thereby injuring them; that appellee had placed several mills on the land and was permitting sawdust to accumulate, which would destroy the value of the land. The complaint stated that the appellee had the right to cut all timber 18 inches and over in diameter, but that they were asserting a right to cut all trees on the land; that appellant notified appellee as soon as it obtained the assignment from the Sparkman Hardwood Lumber Company, and the appellee, instead of respecting appellant's claim, increased its force and continued to cut timber which it had no right to cut. There was a prayer for injunction and permanent restraining order and for damages. The appellees filed answer, denying all the material allegations in the complaint. After taking the evidence, the court entered a decree dismissing appellant's complaint for want of equity, and the case is here on appeal.

It is first contended by appellant that there is an entire absence of language in the contract which shows an intent on the part of the lumber company to claim any growth on its land. In other words, it is the contention of appellant that the lumber company could only take the timber which was of certain dimensions at the time the contract was made, and the first case cited and relied on is *Griffin* v. *Anderson-Tully Co.*, 91 Ark. 292, 121 S. W. 297. The court said in that case: "The language of the contract describing the trees sold is as follows: 'All the cottonwood trees 20 inches in diameter and up at the stump now standing or located on the following described lands' (here follows description of land). Thus it will be seen that the title passed according to the plain and express terms of the contract only to those trees which measured the required size at that date and not at the

date of their severance. The identification of the trees by specifying their size tends to show that the intention of the parties was to include such only as at the time the contract was made answered the description. Their diameter at that time was capable of definite ascertainment.'' It will be observed that the court said the identification of the trees by specifying their size tends to show that the intention of the parties was to include such only as at the time the contract was made answered the description. There is no such identification in the present contract. It does not mention the size of the timber and expressly states that the estimate which does contain the size of the timber is made solely for the purpose of the deferred payments.

The next case referred to is *Neal Lumber & Mfg. Co. v. O'Neal*, 166 S. E. 647. This is a case in which a lease and timber deed were construed, and the deed stated: ''does hereby grant, bargain, sell and convey unto the said W. T. O'Neal, trustee, his successors and assigns, all of the trees and timber of every kind and description growing or being on the land.'' The instrument gave to the purchaser a license and privilege at any and all times to, during the life of the contract, cut and remove all trees and timber growing or being on said lands. The contract in that case was somewhat different from the contract in the present case. ''Growing and being on said lands'' was held by the court to mean such timber as of the dimensions described as growing on the land at the date of the contract, but the court in the O'Neal case said: ''We are aware that our construction of the lease in question may not be in accord with the views expressed by some other courts in like cases, but it is in harmony with adjudications by this court and with the weight of authority,'' and in the same case the court also, with regard to the meaning of the word ''trees,'' held that a plant may be called a tree before it has attained such a growth as to be useful as timber, and the court also said: ''A word may have one meaning in a dictionary and an entirely different meaning in a contract.'' In a case decided by the Federal court where the court was construing a lease giv-

ing the right to cut all timber on the lands suitable for sawmill purposes during the 20 years covered by the lease, "the lessees are entitled to cut, not only the timber suitable at the date of the lease, but all that becomes suitable during the life of the lease." *Nelson* v. *Americus Mfg. Co.*, 186 Fed. 489.

The authorities are not in harmony, and the language and terms of the contracts construed differ. The contract involved in the instant case does not mention the dimensions of the timber sold and does not in express terms provide that the timber sold is that now standing on the land, but the contract gives the purchaser the right to cut any timber it may desire, and we think, when the entire contract is considered, that it was the intention of the parties that the purchaser should have all the timber it desired on the land at any time during the life of the contract. It is claimed, however, by the appellants, that the contract meant timber which would measure twelve inches, eighteen inches above the ground, although there is nothing in the contract to indicate that this is true. Appellants state, however, that the conduct of the Sparkman Hardwood Lumber Company after the contract was consummated shows what it considered it had purchased. Without setting out the evidence, which we think is unnecessary, because we believe the contract is unambiguous, some of the witnesses testified that the Sparkman Hardwood Lumber Company cut timber 8 inches in diameter, and it does not appear that any complaint was ever made about this. Some of the testimony shows that the Gurdon Lumber Company cut timber only six inches in diameter. The appellants say that timber has a well-defined meaning, and that it does not include saplings, undergrowth and shrubs. We agree that this is true under the terms of the usual contract, but that in this instance the purchaser could cut whatever timber it desired.

Appellants cite many authorities to sustain their contention, one of which is 17 R. C. L. 1094. The text relied on states: "Generally speaking, a deed to all the timber on a tract of land without reservation conveys all the timber on such tract. Contracts or deeds for the sale

of standing timber frequently specify the size of the timber sold, but sometimes the term 'timber' is used without definition as to trees included within its scope, and, where this is the case, resort must be had to the definition of the term as well as to the intention of the parties as manifested by the agreement. Where there is nothing to indicate that the contract was made with reference to construction of the word 'timber' peculiar to the locality, and the parties appear to have used the term in its customary meaning, it is generally held that fire wood is not included.''

Appellants also call attention to 38 C. J., p. 143. It is there said: ''The word 'timber' has an enlarged or restricted sense according to the connection in which it is employed. It may refer to standing trees, to stems or trunks of trees cut and shaped for use in the erection of buildings or other structures, and not manufactured into lumber within the ordinary meaning of the word 'lumber,' or to that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships and the like. It has generally been held that the word 'timber' does not include fruit trees, saplings or undergrowth, or trees suitable only for fire wood.''

It may be, as contended by appellants, that the appellees in 1933 cut smaller trees than the Sparkman Hardwood Lumber Company cut, but there is no evidence showing that they cut any timber for any other purpose than the market, and this, under the contract in the instant case, they had a right to do. As we construe the contract, the purchaser had a right to cut any timber it desired to cut, and, in addition to this, the Sparkman Hardwood Lumber Company is admitted to have cut timber below twelve inches in diameter. On these questions of fact as to what the parties did under the contract, the lower court had a right to pass on them and determine the facts, and we cannot say that his finding is against the preponderance of the evidence. The contract in this case is quite different from the usual contract. It is not a sale of the timber, but it is a license and privilege to cut all the timber which the purchaser desired. It nowhere

mentions the dimensions, nor does it state the time at which it shall be cut, except that it must be done within ten years.

The decree of the chancellor is affirmed.

BUTLER, J., (dissenting). The construction of the contract between Thornton & Chancellor and Sparkman Hardwood Lumber Company is the question presented in this case. That contract gave the lumber company and its assigns "the exclusive right for the period of ten years next ensuing to go upon said land and cut and remove therefrom such timber as the said second party or its assigns may desire."

The majority of this court has construed this clause of the contract as giving the appellee the growth of the timber from the date of the contract and the right to cut any of the growth without respect to size or character—in other words, it is permitted, if it sees fit, to entirely denude the land of all vegetation which might in the future develop into merchantable timber. The majority opinion cites no authority for the conclusion reached, learned counsel favor us with none, nor has my research discovered any. All the decisions which I have been able to find use the word "timber" in the sense defined by the lexicographers—i. e., trees which are suitable for being converted into lumber used in building and carpentry.

In the case of Broad River Lumber Co. v. Middleby, 194 Fed. 817, the Circuit Court of Appeals held as follows (quoting syllabus No. 1): "Generally, the word 'timber' as used in a contract selling standing timber, unless modified or controlled by other expressions in the contract, means such trees as are fit to be used in buildings or similar construction; that is, trees of a size fit to be used in the construction of dwellings or ships; trees too small to be used for these purposes, not, strictly speaking, being considered as timber, although their products are utilizable for the construction of interior work in dwellings, or for the manufacture of tools and other appliances."

It might be argued that the definition of "timber" has been broadened because trees are now used for the

manufacture of useful articles other than lumber, such as paper and chemicals distilled from the wood fiber. It is a matter of common knowledge, however, that at the time of the execution of the contract in this case there were no plants for the manufacture of chemicals out of wood, or for the manufacture of small timber into paper, within this State. The contract, therefore, must be construed with reference to the uses to which trees were put at the time of the execution of such contract, which was only for the purpose of the manufacture of trees into lumber.

The recent case of *Nettles* v. *Lichtman,* decided by the Supreme Court of Alabama in January of this year and reported in 91 A. L. R., p. 1455, discusses a contract similar to the one involved in the case at bar and concludes, as does the great weight of authority, that a deed purporting to grant "trees and timber" is to be construed as conveying only such trees as are suitable for the manufacture of lumber to the exclusion of smaller trees usable only for making wood pulp.

The appellant has cited a great many cases to support his contention that the word "timber" as used in the contract must be construed as meaning trees suitable for manufacture into lumber. Among these is the Broad River Lumber Company case, cited *supra; Neal Lbr. & Mfg. Co.* v. *O'Neal,* 166 S. E. 647; *Anderson* v. *Palladine,* 257 Pac. 761; *Roberts* v. *Gress,* 67 S. E. 802; *McRae* v. *Smith,* 137 S. E. 390; *Balderson* v. *Seeley,* 160 Mich. 186, 19 Ann. Cas. 1049. The definition approved in these cases is that generally accepted by the text writers. 17 R. C. L., 1065-1094; 38 C. J., 143.

The generally accepted rule, and the one adopted by this court, is that only such trees as are timber at the date of the contract are included in the contract and intended to pass to the grantee, unless there are prospective words indicating a contrary intention. *Griffin* v. *Anderson-Tully Co.,* 91 Ark. 292, 121 S. W. 297.

The great preponderance of the evidence in this case is that trees were considered merchantable timber fit to be sawed into lumber which were, on the date of the contract, twelve inches in diameter, eighteen inches above

the ground. There is some evidence to the effect that some trees smaller than that were cut by the Sparkman Hardwood Lumber Company, but it is evident, when the testimony is considered in its entirety, that these trees were cut by mistake and most of them were left in the woods. It is also true that a quantity of mulberry posts were cut and some cross-ties, but it is a matter of common knowledge that mulberry is a timber of scattered growth unfit for any use except for making fence posts and is never considered when estimating the value of land for its timber, and the cross-ties were evidently cut from small worthless trees to be used to lay the temporary lines of log roads across the tract of land.

The conclusion is inescapable, when all the evidence is considered, that the grantee construed the contract to mean that it was only entitled to cut the timber suitable for sawing into lumber at the date of the contract. As a basis for fixing the purchase price, it was estimated that the tract contained 13½ million feet of lumber. The grantee cut and removed 25 million feet sawed from trees which with but rare exception were twelve inches in diameter at the stump, and then ceased its operations. If the contract were ambiguous, this conduct on the part of the grantee is amply sufficient to support the construction placed on the contract by the appellant. *Robbins* v. *Kimball*, 55 Ark. 414, 18 S. W. 457; *Kahn* v. *Metz*, 88 Ark. 363, 114 S. W. 911; *Lasater* v. *Western, etc.*, 177 Ark. 997, 8 S. W. (2d) 502; *Natl. Eq. Life Ins. Co.* v. *Bourland*, 179 Ark. 398, 16 S. W. (2d) 6.

It is clear therefore that the appellees had no right to cut any trees which were not at least eight inches in diameter on the 24th day of June, 1924, the date of the contract, and the appellants are entitled to the relief prayed.

For the reasons stated, I respectfully dissent and am authorized to say that Mr. Justice HUMPHREYS approves what has been hereinbefore stated, and joins with me in the dissent.