STATEN ISLAND HYGEIA ICE & COLD STORAGE CO. v. UNITED STATES.

No. L–5163.

District Court, E. D. New York.

Aug. 17, 1934.

Benjamin Mahler, of New York City (Irving Levinson, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (A. D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), and Frank J. Wideman, Asst. Atty. Gen. (Andrew D. Sharpe and E. E. Angevine, Sp. Assts. to Atty. Gen., of counsel), for the United States.

CAMPBELL, District Judge.

This case was brought on the law side of this court, under the provisions of section 24, par. 20, of the Judicial Code, as amended by the Act of February 24, 1925, c. 309, 43 Stat. 972 (28 USCA § 41 (20), to recover income and excess profits taxes alleged to have been overpaid by the plaintiff for the year 1918.

Such taxes were the result of an additional assessment levied by the Commissioner of Internal Revenue, and collected in 1926, 1928, and 1929.

On November 16, 1933, an order was made by another judge of this court transferring the case to the equity calendar.

The case was heard before me on April 30, 1934, and the last brief submitted on June 21, 1934.

This case was tried on a stipulation of facts and oral and documentary evidence offered on the trial.

The facts are as follows:

At all the times hereinafter mentioned and at the time of the trial, the plaintiff was a domestic corporation, organized and existing under the laws of the state of New York, with its principal place of business at No. 23 Gordon street, Stapleton, Staten Island, borough of Richmond, city and state of New York, and Eastern judicial district of New York, and at such time was engaged in the manufacture, sale, and distribution of ice.

On June 16, 1919, plaintiff filed with the Collector of Internal Revenue for the First Collection District of New York, its corporation income and profits tax return for the calendar year 1918, which return showed an income tax of $8,278.84, and an income and profits tax of $765.45.

The sum of $480 was paid on account of said tax on March 20, 1919, and the balance of $285.45 was paid on June 16, 1919.

During the year 1919, plaintiff pursuant to chapter 4 of the Laws of 1918, as amended by chapter 81 of the Laws of 1918 of the State of New York, paid to Benjamin B. Odell, Ice Comptroller of the State of New York, the sum of $4,336.75. Plaintiff contended that this sum was ordinary and necessary in the operation of its business of manufacture of artificial ice, and deducted it from the income reported in the return filed by plaintiff on June 16, 1919.

Plaintiff during the year 1918 expended the sum of $4,622.27, which it contends was for certain repairs and replacements to its plant. It contends that no part of that sum was taken as a deduction when reporting income for the year 1918, in the return filed June 16, 1919.

Plaintiff during the year 1918 paid $3,720 dividends on its capital stock.

It contends that no part of the sum paid as dividend was taken as a deduction by plaintiff in its return filed June 16, 1919.

In 1924, a review and audit of plaintiff's said return for 1918 was had, and the Commissioner of Internal Revenue determined that the plaintiff was liable for additional income and profits taxes for that year in the sum of $5,303.83, and notice of this determination by the Commissioner was sent to plaintiff under date of January 3, 1924.

Plaintiff contends that the additional tax was arrived at by disallowing as a deduction the sum of $4,336.75 paid to the Ice Comptroller, and by further increasing income by $4,622.27 replacement costs, and $3,720 dividends, on the ground that such replacement costs and dividends had been deducted from income when they were not proper deductions.

The total additions to income were $10,-214.08.

On May 13, 1924, the Commissioner of Internal Revenue assessed against plaintiff an additional tax for the year 1918, in the sum of $5,303.83, as detailed in his letter of January 3, 1924.

Under date of June 4, 1924, plaintiff communicated with the Commissioner of Internal Revenue, protesting against the assessment, pointing out that the charges incurred for replacements and dividends had never been deducted, or the result would have been a loss, and that the payment to the Ice Comptroller represented a proper deduction.

At the time of the 1918 assessment, viz., May 13, 1924, the Revenue Act of 1921 (42 Stat. 227) was in force.

On January 25, 1924, plaintiff filed an income and profits tax waiver for the years 1917 and 1918.

No part of the additional tax so assessed was paid on or before January 25, 1925.

During the year 1926, five payments, totaling $1,000, were made by plaintiff on account of this tax assessment; such payments being based on an arrangement entered into between plaintiff and two government representatives, Abe Doischen and Mr. Johnson, deputy collectors of internal revenue, who had demanded payment of that tax under threat that if such payment were not made, the plant would be closed up.

Under date of May 27, 1926, plaintiff communicated with the Commissioner of Internal Revenue requesting a re-examination of the books, and indicating that the additional tax was erroneous, since plaintiff had not been allowed all it was supposed to be allowed.

In July, 1927, an officer of the plaintiff read in the newspapers about the statute of limitations, and under date of July 28, 1927, inquired from the collector of internal revenue whether the tax collection in question was barred.

Under date of February 4, 1928, plaintiff communicated with the Commissioner of Internal Revenue, to the effect that it had been requested to sign waivers for the years 1918 and 1919; that it had refused to sign such waivers, on the ground that the government claim was unjust, and that it had requested a correct audit by the government office and had been unable to get it, and requested that the Commissioner do everything he could to help plaintiff out.

Under date of February 18, 1928, the collector of internal revenue wrote the plaintiff stating: "The tax question had been gone into very carefully and that plaintiff is advised that all of the taxes are legally due; that this statement is made lest plaintiff has a misapprehension as to one or two older items."

Under date of February 28, 1928, plaintiff wrote to the Treasury Department calling attention to the 1918 and 1919 tax assessment, and to payments previously made, and insisting that only the expenses for conducting the business were deducted, and requesting help by having an auditor sent to plaintiff's plant to go over the matter thoroughly and to make a correct return. Thereafter, the government representative, Abe Doischen, a deputy collector of internal revenue, came to the office of plaintiff and stated that they would not accept any more installments but that the payment had to be made in full; that unless such payment is made, the plant would be closed.

Throughout the entire period under review, plaintiff employed no one, either attorney or accountant, who was familiar with tax laws, and the president of the plaintiff had no experience or special knowledge, or anything similar, in connection with the tax law, other than the regular routine of business man's knowledge of the tax laws.

Plaintiff relied upon the statements made in the said letter of February 18, 1928, as well as on the explanations furnished by the government representative, Abe Doischen.

After September, 1926, and until March 28, 1928, no payments were made by plaintiff on account of the alleged 1918 tax liability, and on March 28, 1928, some $4,000 with interest thereon was unpaid.

On March 28, 1928, the plaintiff paid the government $5,000, which was allocated $4,303.83 to the balance of the tax unpaid, and $696.17 toward interest, at the rate of 12 per cent. per annum from date of assessment.

Further payments of interest were made on August 14, 1928, and January 18, 1929, so that the total interest paid by plaintiff was $1,979.60, representing interest at the rate of 12 per cent. per annum on the additional tax of $5,303.83.

During 1929, the government representative, a deputy collector of internal revenue, came to plaintiff for additional payments. The president of the plaintiff had believed that payments had been made in full, but was informed that plaintiff still owed some interest or penalty.

The government representative and the president of the plaintiff had quite an argument, the president of the plaintiff contending that it did not owe the money, and the government representative contending that it did, and the government representative stated, "If you give me $25, that will straighten out the whole business." He also stated, "Sign that paper and that will clear you." The president of the plaintiff signed the paper but did not read it.

The president of the plaintiff was told that they owed $600 or $600 and odd dollars, and if he would pay $25 they would compromise. He then paid the $25 and signed the paper, with the idea that doing that, they were getting rid of the whole thing.

The president of the plaintiff consulted no lawyer, accountant, or tax expert, but relied on the contents of the collector's letter of February 18, 1928.

The paper which was called an "offer of compromise" was signed by Chas. Remert, as president of plaintiff, on September 11, 1929.

The said offer was accepted October 18, 1929.

The Revenue Act of 1928 (26 USCA § 2001 et seq.) became a law on May 29, 1928, and had been in force for over a year and one-half at the time.

Under date of April 28, 1930, a claim for refund was filed by plaintiff alleging, among other things, that the tax was barred when collected, and that arbitrary adjustments and additions to income were made.

This claim for refund was rejected on August 12, 1931.

This action was commenced on June 7, 1932.

The plaintiff attempts in this case to raise an issue on the merits of the additional assessment.

This it seems to me requires no extended consideration, for the reason that if the agreement of compromise is sustained, there can be no recovery, and if the agreement of compromise be vacated the decree must be for plaintiff.

The questions presented therefore are:

1. Does the evidence in this action establish that the plaintiff submitted the offer in compromise under duress, or as a result of misrepresentation and fraud on the part of the defendant?

2. Is this action barred by laches?

This court has jurisdiction of this action under the provisions of section 24 (20) of the Judicial Code as amended by the Act of February 24, 1925, c. 309, 43 Stat. 972 (28 USCA § 24 (20).

The alleged compromise agreement was made under the provisions of section 3229 of the Revised Statutes (Title 26, § 158, U. S. C. [26 USCA § 158]), which provides as follows: "The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced. Whenever a compromise is made in any case there shall be placed on file in the office of the commissioner the opinion of the Solicitor of Internal Revenue, or of the officer acting as such, with his reasons therefor, with a statement of the amount of tax assessed, the amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and the amount actually paid in accordance with the terms of the compromise."

The Revenue Act of 1921, § 250 (d), provides as follows: "The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under

this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, or under section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act. * * *"

The Revenue Act of 1924, § 277 (a) (2), 26 USCA § 1057 note, provides as follows:

"(a) Except as provided in section 278 and in subdivision (b) of section 274 and in subdivision (b) of section 279 [sections 1049, 1058 to 1062 and in subdivision (b) of section 1063 of this title]— * * *

"(2) The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, the Act entitled 'An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes,' approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period."

The Revenue Act of 1924, § 278 (d), 26 USCA § 1061 note, provides as follows: "(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section [section 1057 or in sections 1058 to 1060 of this title], such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act [title] shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the pe-

riod within which an assessment may be made."

The Revenue Act of 1924, § 278 (e), 26 USCA § 1062 note, provides as follows: "(e) This section [sections 1058 to 1061 of this title] shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act [June 2, 1924], such assessment, distraint, or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act [that date]."

The Revenue Act of 1928, §§ 506 (a, b), 606 (a, b) and 607 (26 USCA §§ 1060, 1061, 1062a, 2606, 2607), provides as follows:

Section 506 (a). Section 278 (c) and (d) of the Revenue Act of 1926 are amended to read as follows:

"(c) Where before the expiration of the time prescribed in section 277 [section 1057 of this title] for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

"(d) Where the assessment of any income, excess-profits, or war-profits taxes imposed by this title [chapter] or by prior Act of Congress has been made (whether before or after the enactment of this Act [May 29, 1928]) within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act [May 29, 1928]), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." 26 USCA §§ 1060, 1061.

Section 506 (b). Section 278 of the Revenue Act of 1926 is further amended by adding, at the end thereof, a new subdivision to read as follows: "(f) Any agreement which would be within the provisions of subdivision (c) or (d) of this section [section 1060

or 1061] but for the fact that it was executed after the expiration of the period of limitation extended by such agreement, shall be valid and effective according to its terms if entered into after the enactment of the Revenue Act of 1928 [8:00 a. m. on May 29, 1928] and before January 1, 1929." 26 USCA § 1062a.

Section 606 (a). "The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement." 26 USCA § 2606 (a).

Section 606 (b).

"If such agreement is approved by the Secretary or the Under Secretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

"(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded." 26 USCA § 2606 (b).

Section 607. "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act [May 29, 1928]) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." 26 USCA § 2607.

Regulations 65, promulgated under the Revenue Act of 1924, reads as follows:

"Art. 1272. Period of limitation upon collection of tax— * * *

"Exceptions to the periods of limitations outlined in the preceding paragraph are prescribed in the following cases:

"(1) If the tax imposed by the Acts enumerated above has been assessed within the four year period or the five year period as required by Section 277 (a) of the statute, a proceeding in court or distraint for the collection of such tax may be begun within six years after the assessment thereof."

The acts referred to in such regulations as the acts enumerated were the Revenue Act of 1924, and all prior acts, and reference should also be had to Article 1271 of said Regulations.

Under the facts as found and the statutes cited, supra, it seems to me that but for the fact that offer in compromise has been accepted, in lieu of the unpaid interest and penalty, they would be refundable.

At the times the payments were made the collectors of internal revenue were working, under the provisions of the Regulations of the Treasury Department, interpreting section 278 (d) of the Revenue Act of 1924, as giving the government the right to collect the tax within six years from the date of the assessment, and it was not until the decision of the Supreme Court in Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255, on January 2, 1929, that it was finally determined that such construction was erroneous.

In Russell v. United States, supra, it was held that the provisions of section 278 (d) were not retroactive and therefore could not apply to assessments made prior to June 2, 1924, on which date the Revenue Act of 1924 was enacted.

The assessments here in question were made prior to that date; accordingly the provisions of section 250 (d) of the Revenue Act of 1921 were applicable. Under the provisions of that section, the periods both for assessment and collection expired five years from the date of filing of the return, or such period as extended by waivers; therefore the period within which the tax should have been collected in this case expired January 25, 1925.

This brings us to a consideration of the effect of the offer in compromise.

There can be no question but that all collections of the tax interest or penalty, made prior to the payment of the $25 on the offer in compromise, were made under the construction then placed by the government on the Revenue Act of 1924, and the most that can be said as to that construction is that it was an error of law.

■ There is no evidence whatever to show that the representatives of the government, with whom the president of the plaintiff discussed the question orally, and to whom he gave the offer in compromise, knew that the government had no right to collect or retain the amounts paid by the plaintiff or its taxes for 1918; therefore on their part it was simply an error of law.

There is no evidence to show that the collector of internal revenue, when he wrote the letter to plaintiff, under date of February 18, 1928, knew that the tax against plaintiff for the year 1918 was not collectible but should be refunded. On the contrary, it is evident that the statements contained in that letter were based on Regulations 65, and the decision of the Circuit Court of Appeals of the Fifth Circuit, in United States v. Russell, 22 F.(2d) 249, and that he was acting under the honest belief, though erroneous in law, that the government had six years from the date of assessment to collect the tax. There is no evidence that the officer approving the offer in compromise made any representations or did anything other than to approve what on its face appeared to be a voluntary offer in compromise, and I can see no fraud in that.

■ I am unable to follow plaintiff's argument, that it is entitled to be relieved from the effects of the compromise agreement by reason of the defendant's misrepresentation of a material fact, which induced the making of such compromise agreement. Bloomquist v. Farson, 222 N. Y. 375, 380, 118 N. E. 855; Knight v. Kitchin, 237 App. Div. 506, 510, 261 N. Y. S. 809; Wood v. Dudley, 188 App. Div. 136, 176 N. Y. S. 494; Kramer v. Bjerrum, 19 App. Div. 332, 46 N. Y. S. 496; Williston on Contracts, § 1490, p. 2651; section 1494, p. 2657; section 1495, pp. 2659 and 2660; section 1500, p. 2668; Cooke v. Nathan, 16 Barb. (N. Y.) 342; Berry v. American Central Ins. Co., 132 N. Y. 49, 30 N. E. 254, 28 Am. St. Rep. 548; Haviland v. Willets, 141 N. Y. 35, 35 N. E. 958; Greene v. Smith, 160 N. Y. 533, 55 N. E. 210; Hudson v. Glens Falls Ins. Co., 218 N. Y. 133, 112 N. E. 728, L. R. A. 1917A, 482; 2 Pomeroy's E. Juris. (2d Ed.) § 847, cited by plaintiff, are not in point.

No misrepresentation of fact was made, nor did any representative of the government, the defendant, knowingly misrepresent the law. At most they are statements of opinions on matters of law which were erroneous, and they did not constitute fraud,

nor are they grounds for estoppel. Mutual Life Insurance Co. v. Phinney, 178 U. S. 327, 342, 343, 20 S. Ct. 906, 44 L. Ed. 1088; Coddington v. Railroad Co., 103 U. S. 409, 410, 26 L. Ed. 400; Cleaveland v. Richardson, 132 U. S. 318, 319, 10 S. Ct. 100, 33 L. Ed. 384.

The fact that the taxpayer paid the principal amount of the tax, and part of the penalties and interest, and then submitted an offer in compromise of the remainder of the penalties and interest claimed by the government, which was duly accepted by the Commissioner of Internal Revenue, even though such payments had been made after the expiration of the statute of limitations, does not give the taxpayer the right to recover. Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255; Trumbull Steel Co. v. United States (Ct. Cl.) 1 F. Supp. 762; Hord v. United States (Ct. Cl.) 59 F.(2d) 125.

The fact that the taxpayer did not agree with the Commissioner's determination, and made repeated protests against the assessment, furnishes no ground for setting aside the compromise in this case.

The determination of the Commissioner was made after examination of the books and returns of the plaintiff and is binding. The plaintiff under the statutes had its remedies; it could have filed a claim in abatement, supported by a bond, and had the assessment reviewed by the United States Board of Tax Appeals, or it could have paid the tax and obtained judicial review.

It did not, however, avail itself of either of these remedies, but paid the principal amount of the assessment and part of the penalties and interest, and compromised the balance of the penalties and interest, concluding the entire matter.

The offer in compromise specifically stated that it was voluntarily made, and waived any and all claims to refunds or overpayments, and the benefit of any statute of limitation.

■ The president of the plaintiff who signed the offer in compromise testified that he did not read it at the time he signed it; but that does not change the situation, as he was afforded full opportunity to read the paper if he desired so to do, and if he failed to read it, equity should furnish no relief for his lack of diligence.

Undoubtedly he was not deceived as to the contents of the paper, nor was he induced by any false representation as to its

contents to sign the same; on the contrary, his testimony as to his understanding of the contents of the paper was that the acceptance of the offer would finally conclude the matter of plaintiff's tax liability for the year 1918, and that is exactly what was accomplished by the same, and the compromise settlement is not reviewable. Luchs v. United States (Ct. Cl.) 6 F. Supp. 222.

There was no relation of trust or confidence between the parties, and plaintiff had the same opportunity to acquire knowledge as to the proper construction of the law as the representatives of the defendant, and the compromise should not be overthrown or vacated. Walker v. Alamo Foods Co. (C. C. A.) 16 F.(2d) 694, certiorari denied, 274 U. S. 741, 47 S. Ct. 587, 71 L. Ed. 1320; Backus v. United States (Ct. Cl.) 59 F.(2d) 242; certiorari denied, 288 U. S. 610, 53 S. Ct. 402, 77 L. Ed. 984.

■ The burden of proof rested upon the plaintiff to show that the plaintiff was induced to make the offer in compromise by reason of misrepresentation on the part of the defendant, and plaintiff has failed to bear that burden.

The evidence upon which plaintiff relies to show duress is that of the president and two of the employees of plaintiff, who testified that two representatives of the defendant, who it appears were deputy collectors of internal revenue, had called at the office of the plaintiff and had stated that unless the balance of the 1918 account was paid, or an offer in compromise submitted, they would "close up the plant." Whereupon the offer in question was submitted.

This could mean nothing more than that it would be necessary for them to distrain upon the plaintiff's property to effect the collection, which would be exactly what the law would require, if their construction of it was correct.

The fact is, however, that the plaintiff had been treated with the utmost consideration; payments having been made in installments over a period of years.

The amount of the balance claimed was ascertained, and payment of the amount involved would certainly not have ruined the plaintiff; therefore Snyder v. Rosenbaum, 215 U. S. 261, 30 S. Ct. 73, 54 L. Ed. 186, in which a statute of the territory of Oklahoma was in question, is not in point, nor is Radich v. Hutchins, 95 U. S. 210, 213, 24 L. Ed. 409.

The following cases cited by the plaintiff: Pictorial Printing Co. v. Commissioner of Internal Revenue (C. C. A.) 38 F.(2d) 563; Panther Rubber Mfg. Co. v. Commissioner of Internal Revenue (C. C. A.) 45 F.(2d) 314; and Cline v. Collector, unreported in Federal Reporter,[1] but reported by Commerce Clearing House 1931, vol. III, p. 8540—relate to waiver of the statutory period for collection, not to an offer in compromise stated to be voluntary, and are not in point.

■ The threat of the deputy collectors to do that which under the law they believed to be their duty, distrain, and which if their construction of the law had been the correct one would have been their duty, did not constitute duress. Shaw & Truesdell v. United States (D. C.) 1 F. Supp. 834.

Plaintiff in the offer in compromise stated that the offer was tendered voluntarily, in the following language: "The sum $25. is hereby tendered voluntarily with the request that it be accepted as a compromise offer, and that the release be granted the undersigned from the following liability from the violation or failure specified."

The grounds stated by plaintiff in the offer in compromise, for acceptance of the offer, "Financial Embarrassment," do not constitute duress. Shaw & Truesdell v. United States, supra.

Plaintiff has failed to bear its burden and show duress.

The offer in compromise is not a waiver as contemplated by section 278 of the Internal Revenue Act of 1926, as amended by section 506 (b) of the Internal Revenue Act of 1928 (26 USCA § 1062a).

First, because a waiver is not a contract. Florsheim Bros. Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542.

Second, because an offer in compromise is a contract.

Third, because section 506 (b) supra, by its terms refers to statutory waivers and not to compromises, when it says: "Any agreement which would be within the provisions of subdivision (c) or (d) [section 1060 or 1061]," which subdivisions provide for statutory waivers.

The offer in compromise having been accepted, there is no necessity of considering what would have been the effect, in case of rejection of the waiver by plaintiff, of any statute of limitation.

---

[1] Oral opinion.

754

■ Whether the offer in compromise has the effect of a closing agreement need not be considered, but it is well established that a compromise of interest is a compromise of the entire tax liability. Big Diamond Mills Co. v. United States (C. C. A.) 51 F.(2d) 721.

■ Even if this court is in error and the offer in compromise was executed under duress, the plaintiff, in order to obtain a recession on the ground of duress, must have acted with due diligence and not stood by for a long period of time before attempting such action. Strong v. Strong, 102 N. Y. 69, 5 N. E. 799; Schiffer v. Dietz, 83 N. Y. 300; Kahn v. Metz, 88 Ark. 363, 114 S. W. 911; Wood v. Telephone Co., 223 Mo. 537, 123 S. W. 6.

The additional tax in this case was assessed against the plaintiff on May 13, 1924. By arrangement with the collector, plaintiff paid the tax and the better part of the interest, in a series of installments between May 20, 1926, and January 18, 1929, at which time there was claimed to be unpaid a balance of interest in the amount of $260.98, and a penalty for delinquency of $259.19.

On September 11, 1929, plaintiff submitted an offer in compromise of the balance of its tax liability. On October 18, 1929, the Commissioner of Internal Revenue accepted the offer and so notified the plaintiff, by letter of November 5, 1929.

■ This suit was instituted June 7, 1932, over two and one half years after the offer in compromise had been accepted.

While it is true that plaintiff had endeavored during that time to have the tax refunded, the plaintiff, on May 1, 1930, about seven months after the acceptance of the offer in compromise, having filed a claim for refund which it based upon alleged errors in assessment and collection of the tax, but did not make any reference to the alleged duress or fraud under which the offer in compromise is now claimed to have been procured.

No claim of fraud or duress was made by plaintiff until the petition was filed in this case, and the attempt to set aside the offer in compromise seems to me to be an afterthought.

The plaintiff has been guilty of laches.

A decree may be entered in favor of the defendant against the plaintiff dismissing the petition on the merits, with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by Rule 70½ of the Equity Rules (28 USCA § 723) and Rule 11 of the Equity Rules of this court.