*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

BRIDGEPORT MUSIC, INC., and SOUTHFIELD
MUSIC, INC.,

                *Plaintiffs-Appellees,*

     *v.*

UMG RECORDINGS, INC., and UNIVERSAL
MUSIC INVESTMENTS, INC.,

                *Defendants-Appellants.*

No. 07-5596

————————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00780—Todd J. Campbell, Chief District Judge.

Argued: April 23, 2008

Decided and Filed: November 4, 2009

Before: DAUGHTREY, COOK, and FARRIS, Circuit Judges.[*]

————————————

## COUNSEL

**ARGUED:** Jeffrey D. Goldman, MITCHELL, SILBERBERG & KNUPP LLP, Los
Angeles, California, for Appellants. Richard S. Busch, KING & BALLOW, Nashville,
Tennessee, for Appellees. **ON BRIEF:** Jeffrey D. Goldman, MITCHELL,
SILBERBERG & KNUPP LLP, Los Angeles, California, Philip M. Kirkpatrick,
DICKINSON WRIGHT, Nashville, Tennessee, for Appellants. Richard S. Busch, KING
& BALLOW, Nashville, Tennessee, for Appellees.

———

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth
Circuit, sitting by designation.

1

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. This copyright-infringement case is "one of several hundred filed by [Bridgeport Music, Inc., and Southfield Music, Inc.] against entities and/or individuals associated with the 'rap' or 'hip-hop' music industry," seeking declaratory judgment, injunctive relief, and damages from some 800 defendants for copyright infringement under the federal copyright statute, 17 U.S.C. §§ 101 et seq. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 475 (6th Cir. 2003). The district court severed the original case into 476 separate actions, resulting in the filing of numerous amended complaints based on allegedly infringing musical compositions and sound recordings. *Id.* The one now before us involves the work of George Clinton, known for his leadership of Parliament-Funkadelic, a key band in the 1960s and '70s "funk music" scene. Clinton and his co-authors later transferred ownership of some of the rights in their music to Bridgeport Music, Inc., and Southfield Music, Inc. (collectively, Bridgeport or the plaintiff), including the composition rights to his 1982 single, and perhaps best-known work, "Atomic Dog," which is the subject of the present case.

Public Announcement, an R&B and hip hop group, released the song "D.O.G. in Me" on their *All Work, No Play* album in 1998. Bridgeport claims that "D.O.G. in Me" infringed its copyright on Clinton's "Atomic Dog" based on the use of the phrase "Bow wow wow, yippie yo, yippie yea" (the "Bow Wow refrain"), as well as use repetition of the word "dog" in a low tone of voice at regular intervals and the sound of rhythmic panting in "D.O.G. in Me." A jury later found UMG Recordings, Inc., and Universal Music Group, Inc. (collectively, UMG or the defendant), to have willfully infringed Bridgeport's rights in "Atomic Dog" and awarded statutory damages of $88,980. UMG has appealed the verdict, claiming that the jury was improperly instructed and that UMG was entitled to judgment in its favor as a matter of law on the question of "substantial similarity." We find no reversible error and affirm.

## I.  *FACTUAL AND PROCEDURAL HISTORY*

Songwriters David Spradley, Garry Shider, and George Clinton created "Atomic Dog" in a recording studio in January 1982, working without a written score.  As a result, the composition of "Atomic Dog" is embedded in the sound recording.[1] Testimony at trial indicated that the song was composed spontaneously – Spradley recorded the initial tracks in the studio and recalled that "when George arrived he had been partying pretty heavily so he was, you know, feeling pretty good," and was unsteady at the microphone.  Spradley and Garry Shider "got on either side of him.  We just kind of kept him in front of the microphone" while Clinton recorded the vocal tracks that same night.  "Atomic Dog" was released in 1982 on the *Computer Games* album issued by Capitol Records, which retained the sound-recording copyright to the album.  Spradley, Shider, and Clinton later transferred their interest in the composition of "Atomic Dog" to Bridgeport.

According to expert testimony at trial, "Atomic Dog" "is an anthem of the funk era, one of the most famous pieces from that whole era . . . one of the most famous songs of the whole repertoire of funk and R&B."  In addition to the song's continuing popularity on its own, "Atomic Dog" and other works by Clinton and Parliament-Funkadelic are said to have influenced many contemporary rap and hip hop artists, with the most notable being the style of rap popularized by West Coast rappers such as Dr. Dre, Ice Cube, Snoop Dogg, and Coolio.  *See* Charles L. Hughes, *Clinton, George, in* AFRICAN AMERICAN NATIONAL BIOGRAPHY 331, 332 (Henry Louis Gates Jr. & Evelyn Brooks Higginbotham, eds., 2008).  Testimony at trial confirmed that "Atomic Dog" and other works by Clinton are among the most popular works sampled by rap and hip hop

---

[1]As we noted in *Bridgeport, Inc.*, 327 F.3d at 475 n.3:

> A musical composition consists of rhythm, harmony, and melody. *See* 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 2.05[D].  As described by Appellees, a musical composition "is a particular sequence and arrangement of lyrics and/or music that comprise what most people refer to as a 'song.'"  Under the copyright act, "'sound recordings' are works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." 17 U.S.C. § 101.  Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights. *See* 17 U.S.C. § 102(a)(2), (7).

artists.  According to an expert musicologist, the Bow Wow refrain "is one of the most memorable parts of the song" and is often licensed by itself.

In 1998, A&M Records released the album *All Work, No Play* by the rap group Public Announcement.  The album contains the song, "D.O.G. in Me," composed by songwriter Felony Davis.  The following year A&M Records became a division of UMG.  In 1998, Bridgeport became aware of "D.O.G. in Me" and contacted UMG's predecessors in interest, and later UMG itself, notifying them that elements of "Atomic Dog" were used in the recording without permission and requesting that the record label enter into a licensing agreement or cease distribution of the album and song.  When no response was received this lawsuit followed.

As copyright owner, Bridgeport brought the action for copyright infringement of various songs in the George Clinton catalog in 2001 against multiple defendants, *Bridgeport, Inc., et al. v. 11C Music*, Civ. No. 3:01-0412 (M.D. Tenn. 2001).  After the district court severed the original action, Bridgeport filed an amended complaint UMG. In turn, UMG filed a motion for summary judgment, claiming that the allegedly infringing elements in "D.O.G. in Me" — the use of the word "dog" in a low voice as "musical punctuation," the rhythmic panting, and the Bow Wow refrain — were not copyrightable as a matter of law.  The district court denied UMG's motion, and the matter proceeded to trial.  Following five days of testimony, the jury rendered a verdict in Bridgeport's favor, finding UMG liable for $22,245 in actual damages and $88,980 in statutory damages.  Bridgeport then elected statutory damages and the district court entered judgment in Bridgeport's favor.  The district court denied UMG's subsequent motion for a new trial and motion for judgment as a matter of law, and UMG appealed.

## II.  *DISCUSSION*

Reduced to its essentials, this appeal challenges the propriety of the jury instructions in three respects: substantial similarity, fair use, and willfulness.  On appeal, we review jury instructions as a whole "to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision."  *Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 365 (6th

Cir. 2005) (citation omitted). The legal correctness of the instructions is a question of law that is reviewed *de novo*. *See id.* The refusal of a district court to give a particular instruction, however, is reviewed for abuse of discretion. *See id.* at 365-66. Reversal of a jury verdict based on incorrect jury instructions is warranted only when the instructions, "viewed as a whole, [are] 'confusing, misleading, and prejudicial.'" *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 641 (6th Cir. 2005) (citing *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000)). As a result, we will not set aside a jury verdict on the basis of a technically faulty jury instruction when the error is harmless. *See Barnes*, 201 F.3d at 822.

**A. Substantial Similarity**

There are two essential questions at the heart of any copyright infringement action: whether the plaintiff owned the copyrighted work and whether the defendant copied it. *See Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). The federal constitution requires, moreover, that to be actionable the copying must be of elements of the copyrighted work that are "original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To be original, an element must both be an independent creation of its author and involve at least minimal creativity. *See id.* at 345. To establish that it has been copied, a plaintiff must either introduce direct evidence of the defendant's copying or prove it indirectly by showing that the defendant had access to the plaintiff's work and that there is a substantial similarity between it and the defendant's work, thus giving rise to an inference of copying. *See Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). Even if access cannot be proven, a plaintiff may prevail by showing a high degree of similarity between the two works. *See id.* at 507.

The Sixth Circuit has condensed the substantial-similarity inquiry into a two-part test: first, the court must "'identify[] which aspects of the artist's work, if any, are protectible by copyright'" and, second, "'determin[e] whether the allegedly infringing work is substantially similar to the protectible elements of the artist's work.'" *Kohus*, 328 F.3d at 855 (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295-96 (D.C. Cir. 2002) (internal quotation marks deleted)). Put another way, "copying is an

essential element of infringement and substantial similarity between the plaintiff's and defendant's works is an essential element of copying." *Wickham v. Knoxville Int'l Energy Exposition*, 739 F.2d 1094, 1097 (6th Cir. 1984). To complete the first step, the court must "filter" out elements of the work that are not original to the author. *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 (6th Cir. 2004) (noting that the standard for originality is quite low and that the "vast majority of works make the grade quite easily") (quoting *Feist*, 499 U.S. at 361). *Scènes à faire*,[2] the indispensable or standard aspects of a work, or those that "follow directly from unprotectable ideas" should be filtered out as well. *Id.* at 319.

Once the unprotectable elements have been filtered out, the two works can be compared to determine whether they are substantially similar, a question of fact. We have previously held that the question for the jury in substantial-similarity cases is "'whether a lay observer would consider the works as a whole substantially similar to one another.'" *Murray Hill v. Twentieth Century Fox*, 361 F.3d at 320 (quoting *Williams v. Crichton*, 84 F.3d 581, 590 (2nd Cir. 1996)). However, as have several of our sister circuits, we have also noted that it is appropriate to modify this inquiry for situations in which a smaller fragment of a work has been copied literally, but not the overall theme or concept – an approach referred to in the literature as "fragmented literal similarity." *See* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.03[A][2] (rev. ed. 2009); *see also Bridgeport, Inc. v. Dimension Films*, 410 F.3d 792, 797-98 (6th Cir. 2005) (recognizing the "fragmented literal similarity" standard but declining to apply it in cases of digital sampling); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 373 n.12 (5th Cir. 2004) (noting support for this approach in other circuits). In such situations, even a small degree of copying may support a finding of substantial similarity, depending on the context. *See Murray Hill Publ'ns, Inc. v. ABC Comm., Inc.*, 264 F.3d 622, 633 (6th Cir. 2001) (to constitute infringement, a single line

---

[2]An example of *scènes à faire*, or "stock" themes, in music is found in *Black v. Gosdin*, 740 F. Supp. 1288, 1292 (M.D. Tenn. 1990), involving a dispute over a country music song about a jilted lover set in a bar with a jukebox. The court explained that these elements in the song flow directly from a common theme in country music: "Having chosen the familiar theme of a broken-hearted lover seeking solace in country music, the choice of a barroom with a jukebox as the setting in which to unfold this idea simply cannot be attributed to any unique creativity on the part of the songwriter." *Id.* at 1293.

taken from a protected work would have to be "an integral part" of that work rather than "merely an incidental part of the background" and, by analogy, as "'readily recognizable' in terms of its relationship . . . as 'E.T. phone home' is to its movie source"). Thus, the copying of a relatively small but qualitatively important or crucial element can be an appropriate basis upon which to find substantial similarity. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) (citing *Heim v. Universal Pictures Co.*, 154 F.2d 480, 488 (2nd Cir. 1946) for the proposition that a single brief phrase so idiosyncratic as to preclude coincidence might suffice to show copying). However, "random similarities scattered throughout the works" are not a proper basis for a finding of substantial similarity. *Murray Hill v. Twentieth Century Fox*, 361 F.3d at 320 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)).

In this case, UMG asserts on appeal that the jury was improperly instructed on filtering and substantial similarity and that a properly instructed jury could not have concluded that the two works in question were substantially similar. Specifically, the defendant contends that the jury should not have been able to consider either the word "dog" used as musical punctuation or the rhythmic panting in "D.O.G. in Me" as infringment because those elements are not original and, thus, should have been filtered out. UMG also argues that the jury should have been instructed to consider the two songs as a whole when determining substantial similarity and, so instructed, would not have found substantial similarity due to the different mood and theme of the two songs and the limited usage of elements from "Atomic Dog" in "D.O.G. in Me." We disagree, based on our conclusions, first, that the jury instructions were not erroneous as a matter of law and, second, that the district court did not abuse its discretion in declining to give the instructions requested by the defendant.

As noted previously, the standard for originality is a low one, and the "vast majority of works make the grade quite easily." *Feist*, 499 U.S. at 345. In this case, expert testimony presented at trial was sufficient to permit the jury to conclude that Clinton's use of the three disputed elements in "Atomic Dog" met this minimal standard. Additionally, there was expert testimony that these elements were not just the "mere

abstract idea" of a dog or of the activity of panting because, in Clinton's composition, the word "dog" constituted a "stand-alone melody of one word" used as musical punctuation at intervals on the tonic note of the song and because the sound of panting followed the rhythm of the song. Testimony by David Spradley, a co-creator of "Atomic Dog," also demonstrated that Clinton exercised some degree of creative control over the panting by instructing the performers to create a certain rhythm.

UMG also argues that the jury should not have been permitted to consider the use of the word "dog" and the panting because, as UMG alleges, they were not a part of the composition copyright of "Atomic Dog" but, instead, were elements of the sound recording, in which Bridgeport has no interest. Cited as support for this proposition is the sheet music to "Atomic Dog," which includes the Bow Wow refrain but not the musical punctuation of "dog" or the panting. The sheet music, however, was created long after the song was composed. Uncontroverted testimony at trial established that the song was composed and recorded in the studio simultaneously and, therefore, that the composition was embedded in the sound recording.

UMG further argues that the district court erred in failing to inform the jury, in connection with the instruction on substantial similarity, that they should consider the similarity of the works as a whole. Given that the two songs differed in theme, tempo, and style, UMG argues, no reasonable jury could have found substantial similarity. But, instead of instructing the jury to consider the works as a whole, the district court utilized the "fragmented literal similarity" standard. We conclude that in the circumstances of this case, there was no error.

Although there does not appear to be a reported Sixth Circuit opinion explicitly adopting this approach, we have recognized its viability. *See Murray Hill Publ'ns v. ABC Comm.*, 264 F.3d at 633 ("[W]hen a single line of a larger copyrighted work is appropriated by an alleged infringer, the test is whether 'the work is recognizable by an ordinary observer as having been taken from the copyrighted source'." (quoting *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir.1947) (internal quotation marks omitted) and citing *Whitney v. Ross Jungnickel, Inc.*, 179

F.Supp. 751, 753 (S.D.N.Y.1960) ("Here, only two lines are claimed to have been appropriated from plaintiffs' lyric . . . .   This would not prevent recovery if the lines claimed to have been appropriated constitute an important and vital part of the two compositions rather than being merely incidental or trivial.")).  But,  fragmented literal similarity has been applied by district courts in our circuit and, as noted above, by our sister circuits.  *See, e.g., Neal Publ'ns v. V.F.&W Publ'ns, Inc.* 307 F. Supp. 2d 928, 931 (N.D. Ohio 2004); *Tree Publ'n v. Warner Bros. Records*, 785 F. Supp. 1272, 1275 (M.D. Tenn. 1991).

Here, Bridgeport alleged in its complaint that UMG had copied specific elements of "Atomic Dog" and that these elements were copied literally.  Thus, the overall concept or tone of the work was not relevant to the jury's task.  Instead, the jury heard testimony that described the copied elements of "Atomic Dog" as unique to the song and the Bow Wow refrain, in particular, as the most well-known aspect of the song – in terms of iconology, perhaps the functional equivalent of "E.T., phone home."  Thus, the jury did not act unreasonably in concluding that there was substantial similarity, given evidence that the copied elements had such great qualitative importance to the song.  It follows that the district court did not commit reversible error in basing its instructions on fragmented literal similarity.

**B.  Fair Use**

On appeal, UMG also contends that the district court failed to give the jury an adequate instruction on "fair use," an affirmative defense that it raised at trial.  The doctrine of fair use operates to prevent the mechanistic enforcement of copyright law in a way that would work to repress creativity.  *See Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997).  It constitutes an affirmative defense that may be raised when there is substantial similarity between two works and evidence of copying.  *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 144 (2d Cir. 1998) (quoting 3 NIMMER ON COPYRIGHT § 13.05[A]).  Under the federal copyright statute, fair use covers purposes such as "criticism, comment, news reporting, teaching . . . , scholarship, or research."

17 U.S.C. § 107. In determining applicability of the doctrine of fair use, courts consider these statutory factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

The Supreme Court has held that these statutory factors must be considered "in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). For instance, the first factor – the "purpose and character of the use" – takes into account whether the work is transformative, that is, whether it would further the purpose of copyright to advance scientific and artistic endeavor. *See id.* at 579. Similarly, the second factor addresses whether the work at issue is within the "core" of copyright protection or more marginal, with "creative expression for public dissemination" being within the "core of the copyright's protective purpose." *Id.* at 586. The third factor calls for both a quantitative inquiry into how much original material was used and a qualitative one, regarding the material's importance in the original work. *See id.* at 586-87. Evidence of verbatim copying is highly relevant when considering the third factor, because "it may reveal a dearth of transformative character or purpose under the first factor, or a greater likelihood of market harm under the fourth." *Id.* at 587. The final factor requires a court to consider not only the harm to the market caused by the allegedly infringing use, but also the potential for harm caused by others following in the alleged infringer's footsteps, as well as any harm to the market for derivative works. *See id.* at 590; *see also Castle Rock Entm't*, 150 F.3d at 145-46 (concluding that a trivia book based on the popular television show *Seinfeld* could harm the market for similar derivative products produced or licensed by the copyright owner). Works that purport

to be an homage to the copyrighted work may nevertheless weaken the market for licensed derivative works. *See id.* at 145.

On appeal, UMG claims that an erroneous instruction prevented the jury from considering its fair-use defense, *i.e.*, that copying certain elements from "Atomic Dog" in "D.O.G. in Me" was intended as an homage or tribute and that a properly instructed jury would have concluded that the use of these elements for that purpose was fair. Specifically, the defendant assigns error to the district court's charge to the jury that an homage or tribute is "not necessarily fair use." That charge is, however, an accurate statement of the law. *See* 17 U.S.C. § 107 (purpose and character of the use is only one factor); *Campbell*, 510 U.S. at 578-90 (weighing all factors in light of the purposes of copyright). Moreover, UMG failed to introduce any evidence that would have explained why the songwriter chose to include elements of "Atomic Dog" to honor George Clinton, nor was the purported tribute acknowledged in the credits or liner notes to the album.

Applying the statutory factors from 17 U.S.C. § 107, we conclude that the result reached by the jury was not unreasonable. Although one of them perhaps weighs in favor of UMG, on balance it is clear that the greater weight favors Bridgeport. "D.O.G. in Me" is certainly transformative (first factor), having a different theme, mood, and tone from "Atomic Dog." However, as an original musical composition, "Atomic Dog" is clearly within the core of copyright protection (second factor). Moreover, although the scope of use by "D.O.G. in Me" consisted of relatively small elements of the song, testimony at trial indicated that they were the most distinctive and recognizable elements of "Atomic Dog" (third factor). Finally, although UMG argued that the market for "Atomic Dog" was not the same as for "D.O.G. in Me," the effect on the market of the copyrighted work also includes the market for derivative works. Given the fact that "Atomic Dog" is one of the most frequently sampled compositions of the Funk era, Bridgeport could lose substantial licensing revenues if it were deprived of its right to license content such as that used by UMG. Hence, we cannot say that the jury's verdict was against the great weight of the evidence.

**C. Willfulness**

Finally, UMG contends that the jury instruction regarding willful infringement was in error. The federal copyright statute provides for the imposition of greater penalties "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully." 17 U.S.C. § 504(c)(2). In this case, the district court instructed the jury that "[a]n infringement is willful when a defendant engaged in acts that infringed a copyright and knew that those actions may infringe the copyright." UMG contends, correctly, that willful copyright infringement requires evidence that a defendant has knowingly or recklessly infringed on the copyright, *see Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007), and claims that the district court's use of the word "may" in the instruction led the jury to believe that it could find willful infringement based on a lesser degree of intent than knowing or recklessness. We endorse the general proposition of law but reject the gloss that the defendant has put on the instruction.

Because we review jury instructions as a whole, we must first put the sentence highlighted by the defendant in context. The jury was instructed on the defendant's innocent infringement defense, and the court added that "[a]n infringement becomes a willful infringement if a defendant acquires knowledge that its actions infringe a copyright and the defendant nevertheless continues such infringement." This instruction directly addresses the requisite knowledge for infringement. Read as a whole, it appears that the jury received a correct instruction on willful infringement.

The use of the word "may" with regard to the willfulness standard was, at most, a case of awkward grammar. Even if the terminology could be said to constitute error, we would find the error harmless because the jury had an adequate factual basis from which to arrive at a finding of willfulness. Nor can we endorse the defendant's claim that its good-faith belief that incorporation of elements from "Atomic Dog" was fair use negates willfulness. True, we held in *Princeton University Press* that "one who has been notified that his conduct constitutes copyright infringement but who reasonably and in good faith believes the contrary is not 'willful' for these purposes." 99 F.3d at 1392

(citation omitted). But, in this case the defendant did not present any evidence to establish a basis for their claim of good faith, which is a defense to willfulness only if it is formed prior to the infringing acts. *See* NIMMER ON COPYRIGHT § 14.04[B][3]. Indeed, we have allowed a good-faith belief in fair use to negate willfulness only if a defendant has taken reasonable steps to assure fair use before infringement, not as a "post-hoc rationalization concocted to skirt liability." *Zomba*, 491 F.3d at 584 n.9 (claim of good faith unavailing where creator of infringing karaoke CDs continued to distribute them after receiving notice of infringement and made no legal inquiries about fair use). Here, for instance, there is no dispute that UMG and its predecessors failed to respond to Bridgeport after receiving letters notifying them of possible infringement. Nor is there any evidence that the defendant made an effort to compare the two songs and evaluate whether the use of elements of "Atomic Dog" was actually "fair," as contrasted with the defendant in *Princeton University Press*, who studied the fair-use doctrine and consulted an attorney prior to creating university course packs with infringing material. 99 F.3d at 1384, 1392. Because UMG submitted no relevant evidence to support their good-faith defense, we conclude that there is no basis on which to set aside the jury's verdict.

## III. *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.